J-S38006-15 and J-S38007-15

2015 PA Super 250

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| STEWARD STECKLEY, JR. | |
| Appellee | No. 1995 MDA 2014 |

Appeal from the PCRA Order of November 5, 2014
In the Court of Common Pleas of Schuylkill County
Criminal Division at Nos.: CP-54-CR-0001033-2009
CP-54-CR-0001215-2009

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| STEWARD STECKLEY, JR. | |
| Appellant | No. 2103 MDA 2014 |

Appeal from the Order Entered on November 5, 2014
In the Court of Common Pleas of Schuylkill County
Criminal Division at Nos.: CP-54-CR-0001033-2009
CP-54-CR-0001215-2009

BEFORE:  WECHT, J., STABILE, J., and MUSMANNO, J.

OPINION BY WECHT, J.:                                    **FILED NOVEMBER 30, 2015**

In this consolidated case, both the Commonwealth and Steward Steckley ("Steckley") appeal the November 5, 2014 order granting Steckley's petition for relief pursuant to the Post Conviction Relief Act

("PCRA"), 42 Pa.C.S. §§ 9541-46. We affirm in part, reverse in part, and remand for resentencing.

In 2009, the Commonwealth charged Steckley with two counts of possession of child pornography and one count of prohibited offensive weapons.[1] Prior to trial, the Commonwealth provided sentencing guideline worksheets to Steckley's attorney. Those worksheets contained the guideline sentencing range for each of the above offenses. Based upon Steckley's prior record score, the standard range of the sentencing guidelines called for a sentence of nine to sixteen months' imprisonment for each count of possession of child pornography, with an aggravated range of sixteen to nineteen months' imprisonment. The sentencing worksheets prepared by the Commonwealth did not indicate that any mandatory sentences were applicable to the crimes charged.

On December 3, 2009, immediately before jury selection began, Steckley's attorney engaged in guilty plea negotiations with the district attorney. The Commonwealth offered to recommend an aggregate sentence of three to six years' imprisonment if Steckley pleaded guilty to all charges. Steckley rejected that offer because it "didn't make sense to [him]" in light

_____

[1]    18 Pa.C.S. §§ 6312(d) and 908, respectively. The Commonwealth filed these charges in two separate criminal complaints. On May 20, 2009, the Commonwealth charged Steckley (at CR-1033-2009) with one count of possession of child pornography and one count of prohibited offensive weapons. On July 20, 2009, the Commonwealth charged Steckley (at CR-1215-2009) with a second count of possession of child pornography. The Commonwealth consolidated these cases for trial pursuant to Pa.R.Crim.P. 582.

of the sentencing guideline worksheets provided by the Commonwealth, which indicated a standard range sentence of nine to sixteen months' imprisonment. Notes of Testimony PCRA ("N.T.P."), 8/5/2014, at 21. The Commonwealth then offered to reduce the recommended sentence to a term of two to six years' imprisonment, which Steckley declined for the same reason. *Id.* Having failed to reach an agreement, the parties proceeded to jury selection.

On December 10, 2009, a jury found Steckley guilty of two counts of possession of child pornography, but found him not guilty of prohibited offensive weapons. The trial court ordered Steckley to undergo an evaluation by the Sexual Offender Assessment Board ("SOAB") prior to sentencing. The trial court subsequently continued Steckley's sentencing hearing so that he could seek an independent evaluation from a forensic psychologist. Once these evaluations were completed, the trial court scheduled Steckley's sentencing hearing for April 30, 2010.

On April 30, 2010, the parties appeared for sentencing. However, the Commonwealth's witness from the SOAB failed to appear at the hearing. The trial court continued Steckley's sentencing until June 30, 2010. On June 22, 2010, eight days before Steckley's rescheduled sentencing hearing, the Commonwealth provided Steckley notice of its intent to seek imposition of a mandatory minimum sentence of twenty-five years' imprisonment due to Steckley's prior conviction, in 1994, for indecent assault. *See* 42 Pa.C.S. § 9718.2 (mandatory sentencing scheme for repeat sexual offenders).

On June 30, 2010, the trial court imposed concurrent sentences of twenty-five to fifty years' imprisonment for each of Steckley's possession of child pornography convictions. Steckley timely filed a post-sentence motion. Therein, Steckley maintained that the Commonwealth was required to provide pretrial notice of its intention to seek a mandatory minimum sentence. Steckley based his argument upon the plain language of 42 Pa.C.S. § 9718.2(d), which, at the time, provided as follows:

> **Authority of court in sentencing.**—Notice of the application of this section shall be provided to the defendant **before trial.** If the notice is given, there shall be no authority in any court to impose on an offender to which this section is applicable any lesser sentence than provided for in subsections (a) and (b) or to place the offender on probation or to suspend sentence. . . .

42 Pa.C.S. § 9718.2(d) (2009) (emphasis added).

On September 23, 2010, the trial court denied Steckley's motion, finding that the Commonwealth's post-trial notice "was sufficient under the terms of the [s]tatute." Trial Court Opinion ("T.C.O."), 9/23/2010, at 2. On August 16, 2011, a divided panel of this Court affirmed Steckley's judgment of sentence in an unpublished memorandum decision. *Commonwealth v. Steckley*, 1738 MDA 2010 (Pa. Super. Aug. 16, 2011). The majority held that subsection 9718.2(d) imposed a duty upon defense counsel, rather than the Commonwealth, to give his or her client notice of the mandatory minimum sentence prior to trial. *Id.* at *5.

On September 15, 2011, Steckley filed a petition for allowance of appeal to the Pennsylvania Supreme Court. On December 20, 2011 the

- 4 -

General Assembly amended Subsection 9718.2(d), eliminating the requirement that "[n]otice . . . be provided to the defendant before trial." 42 Pa.C.S. § 9718.2(d) (2009). On April 4, 2012, the Pennsylvania Supreme Court granted Steckley's petition for allowance of appeal, but subsequently dismissed the appeal as having been improvidently granted. *See Commonwealth v. Steckley*, 41 A.3d 855 (Pa. 2012); *Commonwealth v. Steckley*, 67 A.3d 758 (Pa. 2013).

On April 29, 2014, Steckley timely filed a PCRA petition. Therein, Steckley alleged various instances of ineffective assistance of trial counsel. Relevant to this appeal, Steckley alleged that his attorney was ineffective in failing to inform him of the potential that the Commonwealth would seek imposition of a twenty-five year mandatory minimum sentence.

On August 5, 2014, the PCRA court held a hearing on Steckley's petition. Steckley's attorney testified that she was unaware of the potential twenty-five year mandatory minimum sentence, and, therefore, did not apprise Steckley of the same. N.T.P. at 6. She also unequivocally testified that her failure to recognize the extent of Steckley's potential exposure at sentencing negatively affected her representation of Steckley.

> **Q:** If you had been aware of the mandatory minimum, would you have changed how you approached the case[?]
>
> **A:** Absolutely.
>
> **Q:** What would you have done differently?
>
> **A:** I probably would have more strenuously discussed actually taking a plea or working something out by way of not

- 5 -

> having the Commonwealth pursue that mandatory and taking the offered plea.
>
> **Q:** Do you feel you were able to adequately advise [Steckley] regarding the plea offer since you didn't know about the mandatory minimum?
>
> **A:** In hindsight, no, I didn't.

*Id.* at 11-12.

Steckley testified that his attorney engaged in guilty plea negotiations with the district attorney immediately before jury selection began on December 3, 2010. Steckley's attorney informed him that the Commonwealth was willing to recommend an aggregate sentence of three to six years' imprisonment if Steckley would plead guilty to all of the charges. Steckley rejected that offer because it "didn't make sense to [him]" in light of the sentencing guideline worksheet provided by the Commonwealth, which indicated a standard range sentence of nine to sixteen months' imprisonment. *Id.* at 21. The Commonwealth then offered to recommend a sentence of two to six years' imprisonment, which Steckley declined for the same reason. *Id.* Steckley testified that, had he known about the twenty-five year mandatory minimum sentence, he would have pleaded guilty on December 3, 2010. *Id.* at 23.

On November 5, 2014, the PCRA court entered an order granting Steckley's PCRA petition, vacating his convictions, and relisting his cases for trial. On November 24, 2014, the Commonwealth filed a notice of appeal. Although not ordered to do so by the PCRA court, the Commonwealth filed a

concise statement of errors complained of on appeal on December 1, 2014. Also on December 1, 2014, Steckley filed a notice of appeal. On December 8, 2014, the PCRA court ordered Steckley to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Steckley timely complied. On January 9, 2015, the PCRA court filed a Pa.R.A.P. 1925(a) opinion. We *sua sponte* consolidated the above-captioned cases for unitary review.

The Commonwealth presents two issues for our consideration:

1. Did the PCRA [c]ourt err as a matter of law in determining th[at Steckley] carried his burden of proof to show that he was prejudiced by his trial counsel's errors?

2. Did the PCRA [c]ourt err as a matter of law in determining that, where trial counsel fails to inform her client that there is a mandatory minimum sentence applicable to the crimes charged, the proper remedy is vacating the conviction and granting a new trial?

Brief for Commonwealth (1995 MDA 2014) at 4.

In his cross-appeal, Steckley's sole issue parallels the Commonwealth's second issue: "Did the [PCRA] court err and commit an abuse of discretion when, after granting [Steckley's] petition for post-conviction relief, it ordered that the appropriate remedy was a new trial?" Brief for Steckley (2013 MDA 2014) at 3 (capitalization modified).

This Court analyzes PCRA appeals "in the light most favorable to the prevailing party at the PCRA level." ***Commonwealth v. Rykard***, 55 A.3d 1177, 1183 (Pa. Super. 2012). Our "review is limited to the findings of the PCRA court and the evidence of record" and we do not "disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error." ***Id.***

Similarly, "[w]e grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions." **Id.** (citations omitted). "[W]here the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary." Finally, we "may affirm a PCRA court's decision on any grounds if the record supports it." **Id.**

**Commonwealth v. Rigg**, 84 A.3d 1080, 1084 (Pa. Super. 2014).

Pennsylvania has recast the two-factor inquiry regarding the effectiveness of counsel set forth by the United States Supreme Court in **Strickland v. Washington**, 466 U.S. 668 (1984), as the following three-factor inquiry:

[I]n order to obtain relief based on [an ineffective assistance of counsel] claim, a petitioner must establish: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) petitioner suffered prejudice as a result of counsel's error such that there is a reasonable probability that the result of the proceeding would have been different absent such error.

**Commonwealth v. Reed**, 971 A.2d 1216, 1221 (Pa. 2005) (citing **Commonwealth v. Pierce**, 527 A.2d 973, 975 (Pa. 1987)). Trial counsel is presumed to be effective, and a PCRA petitioner bears the burden of pleading and proving each of the three factors by a preponderance of the evidence. **Commonwealth v. Rathfon**, 899 A.2d 365, 369 (Pa. Super. 2006); *see Commonwealth v. Meadows*, 787 A.2d 312, 319-20 (Pa. 2001).

Instantly, the PCRA court found that Steckley established each of the three prongs of the **Pierce** test. On appeal, the Commonwealth argues only

that Steckley "wholly failed to prove the prejudice prong of his ineffective assistance of counsel claim." Brief for Commonwealth (1995 MDA 2014) at 18. Thus, we need not discuss at length the unreasonableness of Steckley's attorney's failure to inform her client that he might be sentenced to a lengthy mandatory term of imprisonment if he opted to go to trial and did not prevail.[2]

In **Lafler v. Cooper**, ___ U.S. ___, 132 S.Ct. 1376 (2012), the Supreme Court of the United States elucidated the showing necessary to satisfy **Strickland**'s prejudice prong (the third prong of the **Pierce** test) in cases where counsel's ineffectiveness causes a defendant to reject a plea offer. In that case, a criminal defendant, Cooper, shot a woman "in her buttock, hip, and abdomen," but the woman survived. **Id.** at 1383. Cooper was charged with, *inter alia*, assault with intent to murder. **Id.** Cooper twice rejected a favorable plea offer, "allegedly after his attorney convinced him that the prosecution would be unable to establish his intent to murder [the victim] because she had been shot below the waist." **Id.** Cooper proceeded to trial and was convicted. **Id.** He then received a sentence much harsher than the one the prosecution initially offered. **Id.**

_____

[2] We acknowledged trial counsel's deficient performance, albeit in *dicta*, when this case was before us on direct appeal. **See Steckley**, 1738 MDA 2010, slip. op. at 6 (Pa. Super. Aug. 16, 2011) ("[I]t is the duty of [] defense counsel to inform his client of those things he needs to know to make a knowing, voluntary, and intelligent decision whether to seek a negotiated guilty plea or go to trial. Certainly, knowledge of sentencing exposure is necessary information.").

The Supreme Court concluded that Cooper's counsel had been ineffective, and explained that a post-conviction petitioner seeking relief on the basis that ineffective assistance of counsel caused him or her to reject a guilty plea must demonstrate the following circumstance:

> [B]ut for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler*, 132 S. Ct. at 1385.

The Commonwealth maintains that Steckley failed to demonstrate every one of these elements. The Commonwealth first argues that Steckley did not establish that he would have accepted the Commonwealth's plea offer but for his attorney's ineffectiveness. According to the Commonwealth, Steckley did not meet his burden because he "presented nothing more than his own self-serving statement that he would have taken the plea." Brief for Commonwealth (1995 MDA 2014) at 14. The Commonwealth also contends that Steckley's PCRA hearing testimony is contradicted by the fact that he "maintained up through trial that he was innocent of the charges." *Id.*

As a preliminary matter, we note that nothing prevents a PCRA petitioner from meeting his burden under *Lafler* with "his own self-serving statement" that he would have entered a guilty plea but for counsel's ineffectiveness. As long as the PCRA court finds the petitioner's testimony to

be credible, there is no coherent justification for characterizing such evidence as inherently deficient as a matter of law. In cases such as the one *sub judice*, where a petitioner's testimony is credible and uncontradicted, it may suffice to establish a reasonable probability that the petitioner would have accepted the prosecution's plea offer.

Nonetheless, Steckley's willingness to enter into a plea agreement finds corroboration in the record before us. Steckley's trial counsel testified that she "strenuously" would have encouraged Steckley to accept the Commonwealth's plea offer had she known about the mandatory sentencing scheme for repeat sexual offenders. N.T.P. at 11. At a minimum, Steckley's attorney believed that her client was amenable to a plea bargain. In addition, the substantial disparity between the recommended sentence of two to six years' imprisonment under the Commonwealth's plea offer and the twenty-five-year mandatory minimum sentence lends credence to Steckley's claim that he would have accepted the proposed bargain.

The Commonwealth cites **Foster v. United States**, to support its contention that a PCRA petitioner cannot carry his or her burden with "self-serving" testimony. 735 F.3d 561 (7th Cir. 2013). The Commonwealth's reliance upon **Foster** is misplaced for two reasons. First, Pennsylvania courts are not bound by the decisions of the federal courts of appeals. **See Commonwealth v. Cook**, 952 A.2d 594, 609 n.12 (Pa. 2008). Second, **Foster** does not stand for the proposition that a post-conviction petitioner can never demonstrate prejudice based upon his or her own testimony. In

fact, the court explicitly declined to reach that conclusion. *See Foster*, 735 F.3d at 567.

In *Foster*, an attorney neglected to inform his client that the government might file a Section 851[3] information, which would have the effect of doubling the defendant's mandatory minimum sentence from ten to twenty years' imprisonment. When, ten days prior to trial, the government filed a Section 851 information, counsel approached his client and suggested that he might still be able to secure a favorable plea agreement. The defendant steadfastly refused to accept a plea bargain, and reiterated his desire to proceed to trial. A jury subsequently convicted the defendant of some, but not all, of the crimes with which he was charged.

Following his sentencing, the defendant filed a motion to vacate his judgment of conviction. Therein, he contended that he would have agreed to plead guilty had his attorney informed him that the government might file a Section 851 information. At a hearing on the defendant's motion, trial counsel testified that the defendant stated he wanted to go to trial even if it meant that he might be sentenced to life imprisonment. According to trial counsel, the defendant reiterated his refusal to accept a guilty plea agreement even after the government filed its Section 851 information. In light of this evidence, the district court found the defendant's testimony to

_____

[3]    *See* 21 U.S.C. § 851 (sentencing enhancements for repeat felony drug offenders).

be incredible, and his attorney's testimony to be credible. **Foster**, 735 F.3d at 566.

Steckley did not learn about the applicable mandatory minimum until after he was convicted at trial. In contrast, the defendant in **Foster** refused to enter into a plea agreement even **after** he learned that the government was seeking imposition of a twenty-year mandatory minimum sentence. Unlike the district court in **Foster**, the PCRA court did not find Steckley to be an incredible witness, nor did Steckley's PCRA hearing testimony conflict with his attorney's testimony.

**Foster** is neither controlling nor persuasive authority. Both the facts of that case and its procedural posture plainly are distinguishable. Furthermore, even if **Foster** were factually analogous to the case *sub judice*, a close reading of the opinion belies the Commonwealth's assertion that **Foster** stands for the proposition that a petitioner cannot demonstrate prejudice with his or her own testimony. **See Foster**, 735 F.3d at 567 (noting that such a precept has "shaky foundations" and a "lack of firm support" in case law).

The Commonwealth's argument that Steckley did not demonstrate a reasonable probability of prejudice because he "maintained up through trial that he was innocent of the charges" is also unpersuasive. **See** Brief for Commonwealth (1995 MDA 2014) at 14. The PCRA court did not err in concluding that Steckley demonstrated prejudice even though he had maintained that he was innocent of the crimes charged. While a defendant's

declaration of innocence is a factor that the PCRA court may consider, it is not determinative.

A defendant's assertion of innocence does not necessarily belie his later claim that he would have accepted a guilty plea offer. A criminal defendant might maintain his innocence up until the point of pleading guilty in order to strengthen his bargaining position. Indeed, a defendant may enter a guilty plea while continuing to maintain that he is factually innocent. *See North Carolina v. Alford*, 400 U.S. 25, 33 (1970). The Commonwealth's argument also ignores the troublesome fact that some innocent defendants do plead guilty. *See Lafler*, 132 S. Ct. at 1397 (Scalia, J., dissenting) ("[Plea bargaining] presents grave risks of prosecutorial overcharging that effectively compels an innocent defendant to avoid massive risk by pleading guilty to a lesser offense[.]").

Next, the Commonwealth argues that Steckley "failed to show that the plea offer would have been made to begin with if the prosecuting attorney would have known about the mandatory minimum." Brief for Commonwealth (1995 MDA 2014) at 14. Here too, the Commonwealth attempts to expand the showing required to establish prejudice beyond the burden enunciated in *Lafler*. Steckley was not required to demonstrate that a more diligent prosecutor would have made the same offer. Whereas Steckley had a Sixth Amendment right to the effective assistance of counsel, the Commonwealth did not. Steckley's attorney should have informed her

client of the possibility that he could face a mandatory twenty-five year sentence irrespective of whether the district attorney knew of the same.

The relevant inquiry is whether a reasonable probability exists that the district attorney would have discovered the mandatory minimum and withdrawn the pendent plea offer prior to the court's acceptance of it. *See Lafler*, 132 S. Ct. at 1385. The Commonwealth argues that the PCRA court was left to speculate on this issue. This is true. But, the test set forth in *Lafler* necessarily requires courts to speculate as to what would have transpired absent trial counsel's ineffectiveness. *Cf. Missouri v. Frye*, ___ U.S. ___, 132 S. Ct. 1399, 1413 (2012) (Scalia, J., dissenting) (denouncing *Lafler*'s prejudice inquiry as "retrospective crystal-ball gazing posing as legal analysis").

Here, the Commonwealth discovered the mandatory minimum sentence nearly seven months after Steckley rejected the Commonwealth's plea offer and proceeded to trial. Based upon this timeline, the PCRA court found it to be reasonably probable that Steckley would have accepted the plea offer long before the Commonwealth sought imposition of the mandatory minimum sentence. Furthermore, even if the Commonwealth had learned of the applicable statute earlier, it does not inevitably follow that it would have withdrawn the plea offer. It is just as likely that the Commonwealth would have used the draconian mandatory sentence as a means to encourage Steckley to plead guilty, thereby avoiding the expense and uncertainty of a jury trial.

The Commonwealth next argues that Steckley failed to demonstrate that, had he entered a guilty plea, the trial court would have accepted it. It is well established that "[w]hile the Commonwealth and a criminal defendant are free to enter into an arrangement that the parties deem fitting, the terms of a plea agreement are not binding upon the court. Rather the court may reject those terms if the court believes the terms do not serve justice." *Commonwealth v. White*, 787 A.2d 1088, 1091 (Pa. Super. 2001).

Under the terms of the Commonwealth's proposal, Steckley would plead guilty to each of the crimes charged, and the Commonwealth would recommend that the trial court impose an aggregate sentence of two to six years' incarceration. Because this arrangement did not involve the dismissal of charges or a negotiated sentence that would bind the trial court upon its acceptance of the plea, it is difficult to imagine any reason why the court would have rejected it. It defies common sense to believe that the trial court, for no apparent reason, would have rejected the plea bargain and ordered the parties to endure a lengthy and expensive trial. *Cf. Commonwealth v. Chazin*, 873 A.2d 732, 737 (Pa. Super. 2005) (rejecting ineffective assistance of counsel claim where the trial judge explicitly stated that he would not have accepted petitioner's guilty plea where the agreement called for a negotiated sentence of four to eight years' imprisonment).

The Commonwealth underscores that, at Steckley's sentencing hearing, the court remarked as follows: "the legislature has commanded me

- 16 -

to impose this sentence[,] but even if the legislature did not, I would impose it anyway." Notes of Testimony, 6/30/2010, at 58. ***Lafler*** requires there be a reasonable probability that the sentence "under the offer's terms would have been less severe" than the sentence actually imposed. Thus, the sentencing court's declaration that it would have imposed an identical sentence notwithstanding the mandatory minimum, if taken at face value, may have been fatal to Steckley's claim that he suffered prejudice. Upon closer inspection however, a sentence of twenty-five to fifty years' imprisonment based upon Steckley's convictions would have constituted an illegal sentence unless the mandatory sentence applied.[4] This fact controverts the sentencing court's contention that it would have, or even that it could have, imposed an identical sentence irrespective of 42 Pa.C.S. § 9718.2.

The PCRA court did not err in concluding that Steckley demonstrated a reasonable probability that, had he accepted the Commonwealth's plea offer, the court would have imposed a sentence less severe than the one he received following trial. As a matter of law, Steckley necessarily would have received a significantly more favorable sentence by accepting the

_____

[4] The jury convicted Steckley of two counts of possession of child pornography, each of which was graded as a third degree felony. Even if the court imposed the statutory maximum sentence for each count, and imposed those sentences consecutively, Steckley's aggregate sentence would have been seven to fourteen years. ***See*** 18 Pa.C.S. § 1103 ("[A] person who has been convicted of a [third degree] felony may be sentenced to imprisonment . . . for a term which shall be fixed by the court at not more than seven years.").

Commonwealth's plea offer. This is true even though the proposed agreement required Steckley to plead guilty to prohibited offensive weapons, an offense that he ultimately was acquitted of at trial. Even if the court rejected the Commonwealth's recommendation of two to six years' imprisonment, imposed the maximum allowable sentence for each of the three counts, and imposed all of those sentences consecutively, Steckley's aggregate sentence would have been nine and one-half to nineteen years' imprisonment.[5]

Viewing the record before us in the light most favorable to Steckley— as our standard of review requires—the Commonwealth has not persuaded us that Steckley failed to demonstrate that he was prejudiced by his attorney's ineffectiveness. *See Rigg*, 84 A.3d at 1084 ("This Court analyzes PCRA appeals in the light most favorable to the prevailing party at the PCRA level."). Steckley was not required to prove that trial counsel's deficient conduct caused a worse result for him. A "reasonable probability" is sufficient. *See Lafler*, 132 S. Ct. at 1385. In granting Steckley post-conviction relief, the PCRA court found reasonably probable Steckley's contention that he would have accepted the Commonwealth's plea offer without either the Commonwealth withdrawing it or the trial court rejecting

_____

[5] *See* 18 Pa.C.S. § 1103 ("[A] person who has been convicted of a [third degree] felony may be sentenced to imprisonment . . . for a term which shall be fixed by the court at not more than seven years."); 18 Pa.C.S. § 1104 ("A person who has been convicted of a [first degree] misdemeanor may be sentenced to imprisonment for a definite term which shall be fixed by the court and shall be not more than . . . [f]ive years.").

it. Because the certified record supports those findings, we may not disturb them on appeal. *See Commonwealth v. Wah*, 42 A.3d 335, 338 (Pa. Super. 2012) ("The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record.").

Having concluded that the PCRA court did not err in granting Steckley's petition, we now must determine whether the appropriate remedy was to vacate Steckley's convictions and to order a new trial. Both the Commonwealth and Steckley argue that it was not. We agree.

Although the Supreme Court left to the trial courts how best to exercise their discretion based upon the circumstances of a particular case, it set forth the following general principles:

> Sixth Amendment remedies should be "tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." *United States v. Morrison*, 449 U.S. 361, 364 (1981). Thus, a remedy must "neutralize the taint" of a constitutional violation, *id.* at 365, while at the same time not grant a windfall to the defendant or needlessly squander the considerable resources the State properly invested in the criminal prosecution. *See United States v. Mechanik*, 475 U.S. 66, 72 (1986) ("The reversal of a conviction entails substantial social costs: it forces jurors, witnesses, courts, the prosecution, and the defendants to expend further time, energy, and other resources to repeat a trial that has already once taken place; victims may be asked to relive their disturbing experiences.").
>
> * * * *
>
> The time continuum makes it difficult to restore the defendant and the prosecution to the precise positions they occupied prior to the rejection of the plea offer, but that baseline can be consulted in finding a remedy that does not require the prosecution to incur the expense of conducting a new trial.

***Lafler***, 132 S. Ct. at 1388-89.

The PCRA court vacated Steckley's convictions and awarded him a new trial. Yet, the prejudice Steckley suffered—a sentence substantially longer than the one offered under the imprudently rejected plea offer—might remain after one retrial or even after ten retrials. A new trial cannot resurrect Steckley's foregone opportunity to accept the Commonwealth's plea offer any more than his first constitutionally sufficient trial did. If Steckley is reconvicted, the Commonwealth, once again, could seek imposition of the mandatory minimum sentence. On the other hand, a new trial gives Steckley another opportunity to obtain an acquittal, a remedy that would be disproportionate insofar as Steckley has neither pleaded nor proved any irregularity in the jury's guilty verdict.

The PCRA court's remedy disregards all of ***Lafler***'s guiding precepts. It fails to "neutralize the taint of [the] constitutional violation," "needlessly squander[s] the considerable resources the [Commonwealth] properly invested in the criminal prosecution," and risks "grant[ing Steckley] a windfall."[6] ***Id.*** Because the court's sentencing discretion is confined by a

_____

[6] The PCRA court reasoned, "[t]o require the Commonwealth to reoffer the original plea proposal, in light of the Commonwealth's error in failing to seek the mandatory minimum in the sentencing guidelines, would be granting a windfall to [Steckley.]" PCRA Court Opinion, 1/9/2015, at 5. It is true that the Commonwealth's relinquishment of a mandatory sentence generally is advantageous for a criminal defendant. Nevertheless, such a "windfall" likely would have ensued in this case had Steckley's Sixth Amendment right to effective counsel been scrupulously honored.

In a similar vein, the learned Dissent argues that "[d]irecting the trial court to order the Commonwealth to offer the rejected plea again would be
*(Footnote Continued Next Page)*

mandatory minimum sentence, the only logical remedy to neutralize Steckley's constitutional injury is "to require the prosecution to reoffer the plea proposal."[7] *Id.* Accordingly, we reverse the PCRA court's order to the extent that it awarded Steckley a new trial, and we remand this case to the PCRA court with instructions to resentence Steckley according to the plea

_____
*(Footnote Continued)*

futile, since that offer was based upon a mutual mistake." *See* Concurring and Dissenting Op. at *3. The Dissent does not cite any cases in which courts have held that a criminal defendant's Sixth Amendment right to the assistance of effective trial counsel is diminished when a prosecutor makes a lenient plea offer. In many cases throughout this Commonwealth, prosecutors enter into plea agreements that they might have considered too generous but for some misconception about the available evidence or the applicable law. After a defendant accepts a favorable plea offer, his sentence remains final even if the prosecutor later learns of his or her misjudgment. The fact that Steckley was provided with constitutionally deficient representation should not compel a different conclusion in this case. Stated simply, the fact that this case presents a "mutual mistake" is of no consequence. Counsel's mistake amounted to a constitutional violation; the district attorney's mistake did not. Although we must remedy the former, the latter is beyond our purview.

[7] Although the learned Dissent acknowledges that our remedy "must 'neutralize the taint' of a constitutional violation," the remedy that it proposes would do no such thing. *See* Concurring and Dissenting Op. at *3. To require that the Commonwealth simply "make a good faith plea offer" upon remand would put Steckley in a far worse position than that in which he would have found himself had the state provided him with constitutionally effective representation in the first instance. *Id.* Indeed, the learned Dissent would license the trial court to "leave the conviction and sentence resulting from the trial undisturbed." *Id.* at *4. This is not a remedy at all, and would do nothing to neutralize the violation of Steckley's Sixth Amendment right to effective counsel. We agree with the learned Dissent that "it must be the trial court that decides how best to exercise its discretion under the circumstances[.]" *Id.* at *4. Because the plea agreement in this case did not include a negotiated sentence, the remedy that we order today fully preserves the trial court's sentencing discretion, while ensuring that the court does not disregard the underlying constitutional violation.

bargain that he previously rejected due to his attorney's deficient performance.

Order affirmed in part and reversed in part. Case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.

Judge Musmanno joins the opinion.

Judge Stabile files a concurring/dissenting opinion.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/30/2015