J-S26039-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| MARVIN O. JOHNSON, | : | |
| | : | |
| Appellant | : | No. 531 EDA 2015 |

Appeal from the PCRA Order January 30, 2015
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0603361-2006

BEFORE: OLSON, STABILE, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.: **FILED MAY 16, 2016**

Marvin O. Johnson (Appellant) appeals from the January 30, 2015 order that denied his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. We affirm.

The PCRA court offered the following summary of the facts underlying Appellant's conviction.

> On May 25, 2006, in the city and county of Philadelphia, the victim, Randall Boyd, went out for dinner and decided to stop at a convenience store on 13th and Spruce Streets. As he proceeded towards it on South Camac Street, [Appellant] approached the victim near the intersection of Manning and South Camac Street. [Appellant] asked him, "Do you want to suck some cock, baby?" The victim glanced back and replied, "No, thank you, sir." As the victim was walking away from the convenience store, [Appellant] grabbed him from behind and said, "Let's see how much cash you have on you." [Appellant] placed his left arm underneath the victim's left arm and covered the victim's eyes and mouth. [Appellant] placed his right arm under the victim's right arm so that both of the victim's arms

*Retired Senior Judge assigned to the Superior Court.

were in the air. While the victim was restrained by [Appellant], two other people punched the victim five to seven times between his eyes, searched his pockets, and they all fled. The victim collected himself and then ran to a nearby hotel, so that he could clean his wounds and contact the police. The victim left to call the police at a nearby pay phone. On his way to the phone, he saw a police car coming down Camac Street, which he flagged down.

Philadelphia Police Officer Beverly Duncan received a radio call alerting her to the area around the 200 block of South Camac Street. Upon arrival, the victim gave Officer Duncan a description of the person who grabbed him, and Officer Duncan relayed that description over the police radio. Together, the victim, Officer Duncan and her partner Officer Gary Burrell drove to examine the scene of the incident on the 200 block of South Camac Street. Meanwhile, Officer Craig Sweeney received information from Officer Duncan about the robbery and went to survey the area. Officer Sweeney observed [Appellant] together with the two other individuals on the corner of 13th and Lombard Streets. He stopped all three individuals at the 1200 block of Kater Street, but [Appellant] ran northbound on 12th Street while his two co-conspirators fled eastbound on Kater Street. Officers Kramer and Brenda McLaughlin responded to Officer Sweeney's radio alert of the foot chase and apprehended [Appellant] on 12th Street. Officers located and apprehended the two co-conspirators in a parking lot on the 1100 block of Kater Street. Officers Duncan and Burrell escorted the victim to 12th and South Street, where the victim identified [Appellant].

* * *

On May 26, 2008, after a seven day jury trial, the Honorable Amanda Cooperman of the Court of Common Pleas declared a mistrial and [Appellant]'s case was scheduled to be re-tried. On May 1, 2009, a jury sitting in front of the Honorable Denis P. Cohen found [Appellant] guilty of robbery-inflicting bodily injury, simple assault, and conspiracy-robbery. [Appellant] was represented by [Alex] Turner, Esq. On June 23, 2009, [Appellant] was sentenced to nine years and four months to eighteen years and eight months imprisonment. [Appellant] filed a Notice of Appeal on July 15, 2009. On August 11, 2010, the Superior Court remanded the case to [the trial court] for

resentencing. On May 20, 2011, [the trial court] imposed a new sentence of fifty to one hundred months imprisonment for robbery-inflicting bodily injury and fifty to one hundred months imprisonment for conspiracy-robbery, with both sentences to run consecutive to each other for a total sentence of one hundred to two hundred months [of] incarceration.

On May 27, 2011, the defendant filed a [PCRA] petition. On November 28, 2011, David Rudenstein, Esq., was appointed to represent [Appellant]. On August 21, 2012, [Appellant] filed a motion to proceed *pro se*. On September 28, 2012, Mr. Rudenstein filed an amended PCRA petition. On February 28, 2014, [the PCRA court] held a **Grazier**[1] hearing, at which [Appellant] decided to allow Mr. Rudenstein to continue representing [him]. On January 30, 2015, [the PCRA court] formally dismissed [Appellant]'s PCRA petition. On February 23, 2015, [Appellant] filed a notice of appeal.

PCRA Court Opinion, 6/30/2015, at 3-5, 1-2 (citations, footnotes, unnecessary capitalization, and repetition of amounts in numeral form omitted). Both Appellant and the PCRA court complied with Pa.R.A.P. 1925.

On appeal, Appellant claims that the PCRA court erred in failing to hold an evidentiary hearing, and to grant PCRA relief in the form of a new trial, on the following four claims:

a. Ineffectiveness of counsel where counsel actually and deliberately failed to meet with [Appellant] prior to trial because it was going to be too much trouble and where the attorney was completely unprepared to provide a defense for [Appellant] and where [Appellant] was constructively denied counsel.

b. Ineffective assistance of counsel wherein counsel completely confused [Appellant] (and anyone else listening) when he attempted to explain to [Appellant] that

---

[1] **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998).

- 3 -

[Appellant] had a right to a "no adverse inference" charge regarding his choice not to testify; the advice given to [Appellant] on the record by defense counsel was incomprehensible.

c. Trial counsel was ineffective when he failed to ask for a ***Kloiber***[2] [i]nstruction.

d. Trial counsel was ineffective by inexplicably resting in front of the jury prior to consulting with his client and prior to [Appellant] being questioned by the [trial court] as to his decision regarding giving testimony and where the announcement of counsel all but precluded [Appellant] from testifying.

Appellant's Brief at 11 (reordered for ease of disposition).

The standard of review for an order denying post-conviction relief is limited to whether the record supports the PCRA court's determination, and whether that decision is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. Furthermore, a petitioner is not entitled to a PCRA hearing as a matter of right; the PCRA court can decline to hold a hearing if there is no genuine issue concerning any material fact and the petitioner is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings.

***Commonwealth v. Taylor***, 933 A.2d 1035, 1040 (Pa. Super. 2007)

(citations omitted).

[I]n order to obtain relief based on [an ineffective assistance of counsel] claim, a petitioner must establish: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) petitioner suffered prejudice as a result of counsel's error such that there is a reasonable probability that the result of the proceeding would have been different absent such error.

---

2 ***Commonwealth v. Kloiber***, 106 A.2d 820 (Pa. 1954).

- 4 -

Trial counsel is presumed to be effective, and a PCRA petitioner bears the burden of pleading and proving each of the three factors by a preponderance of the evidence.

***Commonwealth v. Steckley***, 128 A.3d 826, 831 (Pa. Super. 2015) (internal citations omitted).

Appellant first contends that counsel was ineffective in failing to meet with him before trial. Appellant's Brief at 12. Appellant's argument is as follows:

> On April 15, 2009, Alex Turner, Esquire, Assistant Defender wrote to [Appellant], who was housed at SCI Graterford[,] and in pertinent part stated: "I regret that I will not be able to meet with you prior to your trial, but if there is anything you want to tell me that is not included in your file or any prior correspondence with The Defender Association - all of which I have reviewed - then please feel free to write me at the above address."

> It is sometimes difficult to meet with clients. However, Mr. Turner had the benefit of not being a sole practitioner but working with an organization that employs dozens and dozens of attorneys, not to mention a large paralegal staff and private investigators. It is almost inconceivable that no attorney from The Defender Association could have met with [Appellant] prior to trial. It is simply inconceivable. …

> * * *

> … [Appellant] basically walked into a Courtroom, met his trial attorney and then went to trial. This simply cannot be tolerated. For instance, and even if no one from The Defenders had the time to go to Graterford, a phone call could have been arranged by and between Mr. Turner and a Prison Counselor, so that [Appellant] could have "met" with his attorney, discussed the case and have been prepared for trial.

***Id.*** at 12-13.

This argument utterly ignores that Appellant in fact did have extensive contact with another attorney from the Defender Association before the trial at issue, including **during the seven days of his initial trial**. As the Commonwealth aptly summarized: "The circumstances here showed that [Appellant] at a minimum had prior meetings with the attorney from his first trial, that [Mr. Turner] was aware of the events from [Appellant's] first trial, and that [Mr. Turner] was willing to consider any new ideas that [Appellant] could communicate in correspondence." Commonwealth's Brief at 9. Appellant offers no explanation how Mr. Turner's method gathering of information was any less effective than Appellant's suggested alternative of another attorney from the office meeting with Appellant before the retrial and relaying the gleaned information to Mr. Turner in some fashion.

Moreover, Appellant gives no indication of how he was prejudiced; he fails to identify any information Mr. Turner or Appellant would have obtained from a pre-retrial meeting that would have changed the outcome of the proceedings. Rather, he "urges this Court to presume prejudice as the result of the total denial of counsel...." Appellant's Brief at 13. This Court has rejected a presumption of prejudice in these circumstances. *Commonwealth v. Britt*, 83 A.3d 198, 203 (Pa. Super. 2013) (noting that a petitioner seeking to establish counsel was ineffective in failing to meet with him or her must show actual prejudice). Without even an allegation of

prejudice before it, the PCRA court properly determined that Appellant's first claim warranted no relief.

Appellant next complains of Mr. Turner's counselling concerning whether to ask for the no-adverse-inference instruction regarding Appellant's choice not to testify.[3]  Appellant's argument consists of his taking issue with Mr. Turner's diction and posing rhetorical questions.  Appellant's Brief at 14-16.  Assuming for the sake of argument that Mr. Turner's explanation was deficient, Appellant's claim fails for lack of prejudice.

Although Appellant asserts that, had the instruction been explained to him better, he would have requested that it be given to the jury, notably absent from Appellant's argument is any discussion of how the outcome of the trial would have been different.  Accordingly, the PCRA court properly rejected Appellant's claim.  ***Commonwealth v. Howard***, 719 A.2d 233, 241 (Pa. 1998) (rejecting for lack of actual prejudice claim that counsel was

---

[3]   This "no-adverse-inference" instruction, so called, is contained in the Pennsylvania Suggested Standard Criminal Jury Instructions and provides as follows:

> **3.10A  (Crim)  DEFENDANT'S  FAILURE  TO TESTIFY NOT EVIDENCE OF GUILT**
>
> It is entirely up to the defendant in every criminal trial whether or not to testify. He has an absolute right founded on the Constitution to remain silent. You must not draw any inference of guilt from the fact that the defendant did not testify.

***Commonwealth v. Lewis***, 598 A.2d 975, 978 n.4 (Pa. 1991).

ineffective in failing to request the no-adverse-inference charge); *Commonwealth v. Howard*, 645 A.2d 1300, 1308 (Pa. 1994) (same).

Next, Appellant contends that Mr. Turner was ineffective for failing to request a *Kloiber* instruction. "A *Kloiber* instruction informs the jury that an eyewitness identification should be viewed with caution when either the witness did not have an opportunity to view the defendant clearly, equivocated on the identification of the defendant, or has had difficulties identifying the defendant on prior occasions." *Commonwealth v. Sanders*, 42 A.3d 325, 332 (Pa. Super. 2012). Appellant argues that the victim in the instant case "could not possibly have had a good opportunity to observe his assailant as he was approached from behind, bloodied, punched, and never gave a description of the person other than he was a black male with a red shirt." Appellant's Brief at 18.

The PCRA court disagreed, finding that a *Kloiber* charge was not warranted by the facts at hand:

> In the instant case, the victim stated during both direct and cross examination that immediately prior to the attack, he turned to his right and looked at [Appellant]. The victim never wavered in his consistent identification of [Appellant], and in fact positively identified [Appellant] at trial and during a post-incident identification after the robbery.

PCRA Court Opinion, 6/30/2015, at 9-10 (citations and footnotes omitted).

The PCRA court's finding is supported by the record. *See*, *e.g.*, N.T., 4/29/2009, at 68 ("I turned to the right and I saw his face and I saw him.");

*id.* at 68-69 ("He was wearing a red and white jersey and he had a very large beard and clean shaven head on the top."); *id.* at 90-91 (same testimony on cross-examination). Because the victim testified that he was able to see his attacker clearly, and he never wavered in his identification of Appellant, the PCRA court properly determined that Appellant's ***Kloiber***-based claim lacks arguable merit.

Finally, Appellant claims that Mr. Turner provided ineffective assistance of counsel in indicating that the defense rested before the court held an on-the-record colloquy regarding Appellant's decision not to testify. He argues as follows:

> If [Appellant] had wished to testify, he certainly was put in a more than awkward position after both his attorney and the [trial c]ourt had closed the case. If he had then chosen to testify, [Appellant] would have then been in the position of the [c]ourt having to instruct the jury that [Appellant] now wished to testify even though the case was closed! What would the jury then have thought? This is simply not the way that it should have been handled. Did this prejudice [Appellant]? Of course it did. [Appellant] was put in the position of giving up his right to testify because it was foreclosed by his very own attorney and then, perhaps inadvertently, followed up on by the [trial c]ourt. [Appellant] never had a full and fair opportunity to decide whether he wished to testify.

Appellant's Brief at 20.

Appellant's claim is utterly devoid of merit. As the PCRA court explained:

> "[T]here is no express requirement that a trial court conduct a colloquy with regards to [a] defendant's right to testify." ***Commonwealth v. Todd***, 820 A.2d 707, 712 (Pa. Super.

2003).  The colloquy, though not necessary, was requested by the [trial c]ourt, in an abundance of caution, to ensure that [Appellant] was fully aware of his right not to testify. [Appellant] made it clear that Mr. Turner had already advised him of his right and he had time to consider if he wished to testify.  Had [Appellant] expressed a desire to testify during the colloquy, [the trial c]ourt would have allowed [Appellant] to reopen his case.  In any event, [Appellant] has not alleged that he was prejudiced by having the colloquy after the defense rested.  Indeed, as [Appellant] has not even asserted that he wanted to testify, let alone explain what his testimony would have been, he cannot establish that but for counsel's alleged error, the outcome of the trial would have been any different. As such, [Appellant's] claim is meritless.

PCRA Court Opinion, 6/30/2015, at 9.  We discern no error or abuse of discretion in the PCRA court's analysis.

Because it was evident from the record that Appellant was not entitled to PCRA relief on any of his claims, and no purpose would have been served by any further proceedings, the PCRA court did not err in denying Appellant's petition without a hearing. *Taylor*, 933 A.2d at 1040.  Thus, Appellant is entitled to no relief from this Court.

Order affirmed.

- 10 -

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 5/16/2016