J-A12036-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PATRICK I. ONESKO | : | |
| | : | |
| Appellant | : | No. 1234 WDA 2021 |

Appeal from the PCRA Order Entered September 21, 2021
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0005351-2017

BEFORE:   MURRAY, J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                      **FILED: MAY 27, 2022**

Appellant, Patrick I. Onesko, appeals from the order of the Court of Common Pleas of Allegheny County (trial court) that denied his petition filed under the Post Conviction Relief Act (PCRA)[1] asserting ineffective assistance of his trial counsel with respect to a plea offer that Appellant rejected before trial.  We affirm.

On December 7, 2017, Appellant was convicted by a jury of criminal solicitation to commit involuntary deviate sexual intercourse (IDSI), unlawful contact with a minor, and two counts of corruption of minors.[2]   These

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1]  42 Pa.C.S. §§ 9541–9546.

[2] 18 Pa.C.S. §§ 902(a) and 3123(a), 18 Pa.C.S. § 6318(a)(1), and 18 Pa.C.S. § 6301(a)(1)(i), respectively.

convictions were based on communications by Appellant with a 14-year-old boy and a 15-year-old boy through the social media platform Snapchat. ***Commonwealth v. Onesko***, No. 494 WDA 2018, unpublished memorandum at 1-2 (Pa. Super. filed July 3, 2019). When he first communicated with these teenagers, Appellant, who was a 27-year-old former assistant football coach at their school, represented that he was a high school student. ***Id.*** at 2. Later in these communications, after he admitted his age and identity, Appellant asked the 14-year-old to describe his genitals and propositioned the 15-year-old to engage in oral sex. ***Id.***

Prior to Appellant's trial, the Commonwealth had made a plea offer under which Appellant could plead guilty to two counts of corruption of minors graded as first-degree misdemeanors and two counts of third-degree misdemeanor harassment with a recommended sentence of probation and no reporting under the Sex Offender Registration and Notification Act (SORNA).[3] N.T. Trial at 4. On December 5, 2017, before the start of the trial, the prosecutor set forth the terms of this plea offer on the record and Appellant's trial counsel colloquied Appellant at length concerning the plea offer. ***Id.*** at 4-14. In this colloquy, both the prosecutor and Appellant's trial counsel explained that the offenses with which Appellant was charged were felonies with standard range minimum prison sentences under the sentencing

---

[3] 42 Pa.C.S. §§ 9799.10-9799.41.

guidelines of 3 to $4^1/_2$ years, 4 to $5^1/_2$ years, and 3 months to 1 year and that SORNA reporting would be required if Appellant was convicted of any of those charges. *Id.* at 5-10. Appellant confirmed that he understood these possible penalties and that he was aware of the Snapchat evidence against him, and stated he rejected the plea offer and wished to go to trial. *Id.* at 9-14.

In this colloquy, Appellant specifically testified under oath that trial counsel had discussed this plea offer with him, that he understood it, and that he chose to reject the plea offer:

> ATTORNEY MISKO [TRIAL COUNSEL]: All right. And at some point in time, actually it was last week, I had sent I believe it was a text and maybe later spoke to you in person, I believe it was last Friday, about the offer that was made by the District Attorney's Office?
>
> THE DEFENDANT: Yes, that's correct.
>
>             *       *       *
>
> ATTORNEY MISKO: ... The District Attorney's Office, as of Friday, December 1st, made an offer that in essence they would withdraw Count 1, which is criminal solicitation, withdraw Count 2, which is unlawful contact with a minor, and amend Count 3 from a Felony 3 corruption of minors and the section would have been 6301(a)(1)(ii) to a Misdemeanor 1 corruption and the offense would be 6301(a)(1)(i); do you remember that conversation?
>
> THE DEFENDANT: I do, yes.
>
> ATTORNEY MISKO: And the recommended sentencing from the District Attorney's Office would be a period of probation to be set by the Court?
>
> THE DEFENDANT: Correct.
>
> ATTORNEY MISKO: And you also understand, as I explained to you, that at Count 3 and 4 the Misdemeanor 1 corruption that was

- 3 -

proposed by the District Attorney's Office were not SORNA registration required?

THE DEFENDANT: I understand, yes.

ATTORNEY MISKO: In essence, you would not be considered a sex offender if you pled guilty to those two counts; do you understand that?

THE DEFENDANT: Yes, sir.

ATTORNEY MISKO: In addition, the District Attorney's Office, I'm assuming, would amend the complaint and add Counts 5 and 6 and you would plead guilty to two counts of harassment.

THE DEFENDANT: Correct.

ATTORNEY MISKO: And those counts would be misdemeanors of the third degree for each of the victims in this case; do you understand that?

THE DEFENDANT: I do, yes.

ATTORNEY MISKO: And, again, the District Attorney's Office would be—the sentence recommendation would be a period of probation to be set by the Court.

THE DEFENDANT: Yes.

ATTORNEY MISKO: And I believe also the only other addition that the District Attorney's Office had recommended is no contact with the victims in this case as well as some SOC Court or sex offense oversee [*sic*] by the Court.

THE DEFENDANT: Correct.

ATTORNEY MISKO: … Have you reviewed the offers that have been made by the District Attorney's Office?

THE DEFENDANT: I have, yes.

ATTORNEY MISKO: And you had made a decision to reject those offers and proceed to trial; is that right?

THE DEFENDANT: Yes, that's correct.

ATTORNEY MISKO: And knowing what the prison—the incarceration implications are as the criminal information is now and the SORNA registration requirements, it is still your desire to plead not guilty and proceed to trial?

THE DEFENDANT: That's correct.

THE COURT: All right. Mr. Onesko, do you have any questions regarding anything that has been placed on the record this morning with respect to the original charges outlined in the criminal information and/or the offer that the Commonwealth has made to you?

THE DEFENDANT: I do not, Your Honor.

THE COURT: Do you wish to take some time now to discuss anything with your attorney regarding anything that has been placed on the record?

THE DEFENDANT: I do not, Your Honor.

N.T. Trial at 11-14.

On March 1, 2018, the trial court sentenced Appellant on the solicitation to commit IDSI and unlawful contact convictions to concurrent terms of incarceration of 11 months and 29 days to 1 year, 11 months, and 28 days, with the balance of the sentences after time served to be on house arrest, and 5 years' probation for each of these convictions, with the probation to run concurrently with the sentences of incarceration and house arrest. N.T. Sentencing, 3/1/18, at 37-38; Sentencing Order, 3/1/18.[4] Appellant timely

---

[4] The trial court imposed no further penalty for the corruption of minors convictions. N.T. Sentencing, 3/1/18, at 38; Sentencing Order, 3/1/18, at 2.

appealed and this Court on July 3, 2019 affirmed the judgment of sentence. On January 2, 2020, the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal. *Commonwealth v. Onesko*, 222 A.3d 1124 (Pa. 2020).

In May 2018, while the appeals from his March 2018 judgment of sentence were pending, Appellant was arrested for violating the conditions of his probation by contacting a 16-year-old in West Virginia on a teen dating internet app and engaging in oral sex with the 16-year-old. *Commonwealth v. Onesko*, No. 1191 WDA 2020, unpublished memorandum at 3-4 (Pa. Super. filed August 19, 2021). After conducting hearings on these violations, the trial court revoked Appellant's probation and sentenced him to an aggregate term of 3 to 6 years' incarceration, followed by 4 years' probation. *Id.* Appellant discontinued an appeal from his revocation of probation sentence and, on April 1, 2020, filed a PCRA petition alleging that his probation revocation counsel was ineffective. *Id.* at 5. The trial court held an evidentiary hearing on that PCRA petition and denied the petition on October 27, 2020. *Id.* at 5-7. On August 19, 2021, this Court affirmed the trial court's denial of Appellant's probation revocation PCRA petition and the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal from that affirmance on December 22, 2021. *Commonwealth v. Onesko*, 269 A.3d 1231 (Pa. 2021).

On December 31, 2020, while his appeals from the denial of his probation revocation PCRA petition were pending, Appellant filed the instant PCRA petition asserting that his trial counsel was ineffective in failing to competently advise him with respect the Commonwealth's plea offer. On August 20, 2021, the trial court held an evidentiary hearing on this PCRA petition at which Appellant, Appellant's trial counsel, and Appellant's mother testified.

Appellant testified that trial counsel never discussed a plea bargain with him and that trial counsel communicated plea offers only to his mother. N.T. PCRA, 8/20/21, at 9-10, 24-25, 30, 33-36, 43-44, 48. Appellant testified that he did discuss the case with trial counsel and that trial counsel told him that the Commonwealth's case against him was "a crap case," that it was overcharged, that the district attorney was "grasping at straws," and that Allegheny County judges are "traditionally soft on punishment." *Id.* at 9-11, 31, 38-39. He admitted, however, that he knew that the Commonwealth's evidence against him included Snapchat messages that he sent to the two boys lying about his identity, indicating that he would have oral sex with one of the boys and asking the other boy about the size of his penis. *Id.* at 11-12. Appellant testified that before trial he never saw or was told about an email that trial counsel sent his mother on December 2, 2017, the Saturday before trial, advising of the misdemeanor and probation plea offer and describing this plea offer as a "[g]ood deal, considering [Appellant] has

exposure to Felony 3 corruption [of minors] charges." *Id.* at 12-13, 15-16, 18-19. Appellant admitted that he was aware of the plea offer and rejected it before trial started, but claimed that trial counsel never told him that the plea offer was a good deal or advised him to accept the plea. *Id.* at 19-20, 22, 50-52. He admitted that trial counsel never told him to reject the plea offer. *Id.* at 30.

Trial counsel testified that he had two conversations with Appellant concerning the offer of a plea to misdemeanor corruption of minors and harassment with a sentence of probation prior to the colloquy and start of trial, one on the Friday before trial and a second discussion for 20-30 minutes at the courthouse on the day of trial. N.T. PCRA, 8/20/21, at 58-68. Trial counsel testified that he felt the offer was an excellent plea offer, that he advised Appellant to take it, but that Appellant turned it down twice. *Id.* at 71-72, 80, 82-84, 86-88. Trial counsel testified that Appellant had previously made clear that he would not accept a plea to a felony and would plead only to an offense not requiring SORNA registration with no incarceration sentence. *Id.* at 72, 82, 86. Trial counsel testified that he advised Appellant to accept the plea offer because it satisfied these criteria, because of the trauma to his family if he was convicted, and because he would likely be jailed if he was convicted of the felony charges against him. *Id.* at 59, 71, 82-83. Trial counsel also testified that he told Appellant that the plea offer was an extremely reasonable offer and that if it were him, he would take the plea.

*Id.* at 83-84. Trial counsel testified that Appellant rejected the plea and that Appellant told him that he turned it down because he would never be able to coach high school or college sports if he pled guilty. *Id.* at 72, 83.

Trial counsel testified that with respect to merits of the Commonwealth's case, he told Appellant that the evidence against him was "challenging" and that it was difficult to predict what a jury would do. N.T. PCRA, 8/20/21, at 71. He testified that earlier in his representation of Appellant, probably shortly after the preliminary hearing, he would have told Appellant and his mother that "when you go to trial you have a 50/50 chance of winning" and that "[y]ou never know what a jury is going to do" because he tells that to all of his clients. *Id.* at 79, 84-85.

Appellant's mother testified that when she spoke to trial counsel in late July 2017, trial counsel said that "the jury would laugh at this case" and that in October 2017, trial counsel told her that the Commonwealth's case "was crap." N.T. PCRA, 8/20/21, at 101, 110. Appellant's mother testified that she was present at the meeting between trial counsel and Appellant the Friday before trial and that no plea offer was discussed at that meeting. *Id.* at 118-19. She also testified that she was with Appellant the morning of the trial and that no meeting between trial counsel and Appellant occurred. *Id.* at 119-20. She testified that she received an email from trial counsel setting forth the Commonwealth's plea offer two days before trial but did not tell Appellant about the plea offer. *Id.* at 124-25. Appellant's mother denied that trial

counsel ever told Appellant that his chances of winning at trial were 50/50. *Id.* at 125.

On September 21, 2021, the trial court issued an order denying this PCRA petition. Trial Court Order, 9/21/21. In its findings of fact accompanying the order and the opinion that it issued following this appeal, the trial court found that trial counsel's testimony was credible and that trial counsel thoroughly discussed the plea offer with Appellant, advised Appellant that the plea offer was a good offer, and advised Appellant to take the plea offer. Trial Court Findings of Fact, 9/21/21, at 8-9; Trial Court Opinion, 1/4/22, at 8-9. The trial court found that Appellant's claim that trial counsel did not discuss the plea offer with him was contradicted by Appellant's sworn testimony in the colloquy before the start of trial and rejected this claim as not credible. Trial Court Findings of Fact, 9/21/21, at 4-8; Trial Court Opinion, 1/4/22, at 4-8. The trial court also found Appellant's and his mother's testimony concerning trial counsel's statements about the case not credible and found that trial counsel did not make any representations that the case against Appellant was weak or that Allegheny County judges are lenient. Trial Court Findings of Fact, 9/21/21, at 9; Trial Court Opinion, 1/4/22, at 9.

Appellant argues in this appeal that the trial court erred in rejecting his claims that trial counsel told him that the case was weak and did not discuss the plea offer with him and that even if those claims were properly rejected, trial counsel's statement concerning a 50/50 change of winning made his

advice concerning the plea offer inadequate. None of these arguments has any merit.

Our review of the denial of a PCRA petition is limited to determining whether the record supports the trial court's findings and whether the court's decision is free of legal error. *Commonwealth v. Mason*, 130 A.3d 601, 617 (Pa. 2015); *Commonwealth v. Johnson*, 236 A.3d 63, 68 (Pa. Super. 2020) (*en banc*); *Commonwealth v. Steckley*, 128 A.3d 826, 831 (Pa. Super. 2015). We must view the court's findings and the evidence of record in a light most favorable to the prevailing party, and the court's credibility determinations, if supported by the record, are binding on this Court. *Mason*, 130 A.3d at 617; *Johnson*, 236 A.3d at 68; *Commonwealth v. Widgins*, 29 A.3d 816, 820 (Pa. Super. 2011).

To be entitled to relief under the PCRA on a claim of ineffective assistance of counsel, the convicted defendant must prove: (1) that the underlying claim is of arguable merit; (2) that counsel's action or inaction had no reasonable basis; and (3) that he suffered prejudice as a result of counsel's action or inaction. *Mason*, 130 A.3d at 618; *Commonwealth v. Grayson*, 212 A.3d 1047, 1054 (Pa. Super. 2019); *Steckley*, 128 A.3d at 831. The defendant must satisfy all three prongs of this test to obtain relief on an ineffective assistance of counsel claim. *Mason*, 130 A.3d at 618; *Johnson*, 236 A.3d at 68; *Steckley*, 128 A.3d at 831.

A defendant is entitled to competent advice of counsel concerning plea offers. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012); *Grayson*, 212 A.3d at 1054. The requirements of an ineffective assistance of counsel claim are satisfied where the defendant shows that his counsel failed to provide competent advice concerning a plea offer by the prosecution and that there is a reasonable probability that he would have accepted the plea offer if he had been competently advised concerning the plea offer. *Lafler*, 566 U.S. at 162-70, 174 (ineffective assistance of counsel in rejection of plea offer shown where parties conceded that counsel's advice that defendant could not be convicted of the most serious offense was deficient); *Steckley*, 128 A.3d at 832-36 (ineffective assistance of counsel shown where defendant who rejected plea offer was incorrectly advised concerning his sentence exposure if convicted).

Here, the trial court found that Appellant did not show any deficiency in trial counsel's communications and advice to Appellant concerning the plea offer. Trial Court Findings of Fact, 9/21/21, at 8-9; Trial Court Opinion, 1/4/22, at 8-9. Those findings are amply supported by the record. Trial counsel testified that he discussed the plea offer twice with Appellant, that he told Appellant that the evidence against him was "challenging," and that he explained the benefits of the plea offer and advised him to take the plea offer. N.T. PCRA, 8/20/21, at 58-68, 71-72, 80, 82-84, 86-88. The trial court found trial counsel's testimony credible. Trial Court Findings of Fact, 9/21/21, at 8-

9; Trial Court Opinion, 1/4/22, at 8-9. In addition, the colloquy before the start of trial shows that Appellant was fully and correctly advised of the sentencing exposure he faced if convicted and confirms that trial counsel had discussed the plea offer with Appellant before trial. N.T. Trial at 5-14.

Appellant argues that he and his mother testified that trial counsel characterized the Commonwealth's case as weak and unlikely to result in a harsh sentence and that trial counsel did not discuss the plea offer with Appellant. The trial court, however, rejected their testimony as not credible and specifically found that trial counsel did not make the statements that they alleged concerning the strength and likely outcome of the case. Trial Court Findings of Fact, 9/21/21, at 4, 8-9; Trial Court Opinion, 1/4/22, at 4, 8-9. These credibility findings are also amply supported by the record. As the trial court noted, Appellant's and his mother's testimony was contradicted by Appellant's own testimony in the plea colloquy that trial counsel had discussed the plea offer with him. N.T. Trial at 11-13. In addition, their claims were disputed by trial counsel, who not only testified that he discussed the plea offer twice with Appellant and advised him to take the plea offer, but also denied telling Appellant that the case was weak or that a prison sentence was unlikely. N.T. PCRA, 8/20/21, at 58-68, 71-72, 76-77, 80, 82-88. Because the trial court's determination that Appellant and his mother were not credible is supported by the record, we are bound by that determination and their testimony cannot provide a basis for PCRA relief. **Widgins**, 29 A.3d at 820.

Appellant's remaining argument likewise fails. Contrary to Appellant's contention, trial counsel's reference to a 50/50 chance at trial does not show any deficiency in his advice concerning the plea offer. Trial counsel did not testify that he told Appellant in discussing the plea offer that he was likely to be acquitted or that he gave Appellant an opinion as to what the outcome of a trial would be. Rather he testified that he probably made this statement early in the case and described this as a communication of uncertainty based on the unpredictability of juries that he makes to his clients in all cases. N.T. PCRA, 8/20/21, at 79, 84-85. Given the evidence, found credible by the trial court, that trial counsel properly advised Appellant concerning the sentences he faced if convicted and the advantages of accepting the plea offer and that trial counsel advised Appellant that the evidence against him was challenging, that the plea offer was a good offer and that he should take the plea offer, such a statement of the inherent uncertainty as to the outcome of a jury trial does not show any deficiency in trial counsel's advice.

As the record supports the trial court's determination that trial counsel competently advised Appellant concerning the Commonwealth's plea offer, Appellant's sole PCRA claim lacks merit. *Widgins*, 29 A.3d at 820. Accordingly, we affirm the trial court's order denying Appellant's PCRA petition.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date:  5/27/2022