J. A15043/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| NEIL PAL, | : | No. 1986 MDA 2017 |
| | : | |
| Appellant | : | |

Appeal from the PCRA Order, December 1, 2017,
in the Court of Common Pleas of Lackawanna County
Criminal Division at No. CP-35-CR-0002269-2013

BEFORE:  PANELLA, J., MURRAY, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED: NOVEMBER 9, 2018**

Neil Pal appeals the order of December 1, 2017 issued by the Court of Common Pleas of Lackawanna County that denied his first petition filed pursuant to the PCRA.[1]  After careful review, we affirm.[2]

The relevant facts and procedural history, as gleaned from the PCRA court opinion, are as follows:  Appellant and Jason Dominick ("Dominick") were best friends.  (PCRA court opinion, 12/1/17, at 5.)  Dominick had a long-time volatile relationship with Keri Tucker ("Tucker").  From March through May 2013, Tucker and Frank Bonacci ("Bonacci") were involved romantically, while Tucker and Dominick were not seeing each other.  On

---

[1] Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546.

[2] On April 12, 2018, this court granted appellant's application to exceed the word limit on his brief.

May 5, 2013, Dominick sent a text message to appellant, which stated, "just so you know, [appellant], I'm cool with your boy [Bonacci], but if he ever gets cocky around me I will just snuff him." Bonacci and Tucker stopped dating in May 2013 as Tucker and Dominick resumed their relationship. (*Id.* at 6-7.)

On June 8, 2013, Dominick challenged Bonacci to meet him at Roaring Brook Step Falls ("Step Falls") and fight following the receipt of a text message from Bonacci concerning Tucker and an incident in which Bonacci bumped Tucker at a bar. Bonacci alerted appellant by text that Dominick wanted to fight him. Appellant went to Step Falls and met Dominick and Tucker. Appellant spoke to Bonacci by telephone and encouraged him to come and fight Dominick. Bonacci did not come to Step Falls. (*Id.* at 7.)

At approximately 2:30 a.m. on July 20, 2013, Bonacci arrived at a party hosted by appellant. By 6:00 a.m., all of the partygoers had either left or retired for the night except for appellant, Dominick, Bonacci, and Brandon Emily ("Emily"). Appellant told Emily that he was going to drive Dominick and Bonacci to their respective apartments in Bonacci's Jeep. At approximately 6:50 a.m., Emily heard the Jeep start. A University of Scranton surveillance camera that was located a few blocks from appellant's residence videotaped Bonacci's Jeep as it crossed railroad tracks and approached an access road for Step Falls at 6:51 a.m. (*Id.* at 11-12.)

On July 27, 2013, police located Bonacci's decomposing body in the front passenger seat of his Jeep at the bottom of a steep embankment in a wooded

area near Step Falls less than one mile from appellant's residence. The police deduced that Bonacci had not been operating the Jeep when it went down the embankment and 72-foot ravine. As part of the autopsy, Gary Ross, M.D., determined that Bonacci's cause of death was a single gunshot wound to the head and manner of death was termed a homicide. (*Id.* at 3-4.) Police arrested appellant on August 1, 2013. (*Id.* at 21.)

Following a jury trial, appellant was convicted of first-degree murder (accomplice) and criminal conspiracy on June 12, 2014, and was sentenced to an aggregate term of life imprisonment on September 5, 2014.[3] (*Id.* at 23.)

On September 11, 2014, appellant's trial attorneys withdrew their appearances. Also on September 11, 2014, appellant's new counsel, William C. Costopoulos, Esq., entered his appearance and filed post-trial motions. On January 9, 2015, the trial court denied the post-trial motions. Appellant timely appealed to this court. (*Id.* at 23-24.) This court affirmed on November 17, 2015, and the Pennsylvania Supreme Court denied appellant's petition for allowance of appeal on May 11, 2016. ***Commonwealth v. Pal***, 134 A.3d 496 (Pa.Super. 2015) (memorandum decision), ***appeal denied***, 138 A.3d 3 (Pa. 2016).

On March 7, 2017, appellant filed a timely, counseled PCRA petition and requested a new trial because of the ineffective assistance of counsel, Paul Walker, Esq. ("Attorney Walker") and Matthew Comerford, Esq.

---

[3] 18 Pa.C.S.A. §§ 2502(a) and 903(a), respectively.

("Attorney Comerford"). Appellant asserted that trial counsel was ineffective for failing to raise objections to his sequestration barring him from speaking with counsel until his cross-examination had concluded, to testimony offered by Detective Michael Schultz ("Detective Schultz"), and to alleged hearsay statements of Dominick.[4] (***Id.*** at 24.) Appellant also asserted that his counsel was ineffective because they recommended that he decline the Commonwealth's offer of a guilty plea to third-degree murder. (***Id.***)

On June 29, 2017, the PCRA court conducted a hearing. At the hearing, appellant withdrew his claim for ineffectiveness with respect to Dominick's testimony. (***Id.*** at 25.) On December 1, 2017, the PCRA court denied the petition. The PCRA court completed an extensive opinion that accompanied the December 1, 2017 order. On December 18, 2017, appellant filed a notice of appeal. The trial court did not direct appellant to file a concise statement of errors complained of on appeal.

On appeal, appellant raises the following issues for this court's review:

> A. Whether defense trial counsel were ineffective for failing to know the law and object to the sequestration of appellant from counsel during the overnight break in his testimony and prior to closing arguments, which violated his state and federal constitutional right to counsel?

---

[4] Dominick was tried separately. Dominick was convicted of third-degree murder, 18 Pa.C.S.A. § 2502(c), and criminal conspiracy to commit third-degree murder, 18 Pa.C.S.A. § 903(a). He was sentenced to an aggregate term of 40 to 80 years' imprisonment. He appealed to this court which affirmed. Dominick appealed to the Pennsylvania Supreme Court which denied his appeal. ***Commonwealth v. Dominick***, 136 A.3d 1025 (Pa.Super. 2016) (memorandum decision), ***appeal denied***, 141 A.3d 478 (Pa. 2016).

> B. Whether defense counsel were ineffective for failing to object to Detective Schultz's extensive testimony regarding his "interpretations" of the text messages, emails, phone calls and Facebook entries by appellant, [Dominick] and other witnesses in this case which were beyond his competence, inadmissible, prejudicial, they spoke for themselves, and counsel compounded the error by then eliciting on cross the detective's opinions on appellant's intent, credibility and actual guilt?
>
> C. Whether defense trial counsel rendered appellant ineffective assistance of counsel by failing to affirmatively recommend to him that he accept the third-degree murder plea bargain offered by the prosecution, especially in light of the overwhelming evidence against him and given the fact that according to his own testimony, as prepared by counsel, he could be convicted of third-degree murder as skillfully argued to the jury in closing by the prosecutor?

Appellant's brief at 6.

We limit our review of a PCRA court's decision to examining whether the record supports the PCRA court's findings of fact and whether its conclusions of law are free from legal error. *Commonwealth v. Mason*, 130 A.3d 601, 617 (Pa. 2015) (citations omitted). We view the PCRA court's findings and the evidence of record in a light most favorable to the prevailing party. *Id.*

To be entitled to PCRA relief, the defendant bears the burden of establishing, by a preponderance of the evidence, that his conviction or sentence resulted from one or more of the circumstances enumerated in 42 Pa.C.S.A. § 9543(a)(2), which include ineffectiveness of counsel that "so

undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place."  42 Pa.C.S.A. § 9543(a)(2)(i) and (ii); *see also Mason*, 130 A.3d at 618 (citations omitted).

Instantly, appellant first complains that trial counsel were ineffective for failing to object to appellant's sequestration from counsel during the overnight break in his testimony and prior to closing arguments which violated his state and federal constitutional right to counsel.  (Appellant's brief at 13.)

> Counsel is presumed effective, and in order to overcome that presumption a PCRA petitioner must plead and prove that:  (1) the legal claim underlying the ineffectiveness claim has arguable merit; (2) counsel's action or inaction lacked any reasonable basis designed to effectuate petitioner's interest; and (3) counsel's action or inaction resulted in prejudice to petitioner.  With regard to reasonable basis, the PCRA court does not question whether there were other more logical courses of action which counsel could have pursued; rather, [the court] must examine whether counsel's decisions had any reasonable basis. Where matters of strategy and tactics are concerned, [a] finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued.  To demonstrate prejudice, a petitioner must show that there is a reasonable probability that, but for counsel's actions or inactions, the result of the proceeding would have been different.  Failure to establish any prong of the . . . test will defeat an ineffectiveness claim.

*Mason*, 130 A.3d at 618 (internal quotation marks and citations omitted).

On June 11, 2014, appellant was testifying on direct examination when the trial court called for a mid-afternoon break at 3:30 p.m.  (Notes of

testimony, 6/11/14 at 249.) Cross-examination commenced shortly thereafter. (*Id.* at 259.) At approximately 4:45 p.m., the trial court called for a recess until the next morning. (*Id.* at 302.)

After the jury exited the courtroom, the trial court, appellant, Attorney Walker, appellant's counsel, Curt Parkins, Esq. ("Attorney Parkins"), the Commonwealth's attorneys, William Fisher, Esq. ("Attorney Fisher"), and Brian Gallagher, Esq. ("Attorney Gallagher"), engaged in the following discussion:

> THE COURT: Because of the fact that you are under examination nobody, including your lawyers, can talk to you. Do you understand?
>
> [Appellant]: Yeah.
>
> THE COURT: Counsel, I instructed him about being under examination and not being able to speak to you.
>
> [Attorney Walker]: It's difficult to prepare our closing without consulting with the client.
>
> THE COURT: What was that?
>
> [Attorney Walker]: It's difficult to prepare a closing without consulting with your client.
>
> THE COURT: What else would you have to --
>
> [Attorney Walker]: I don't know, Judge. The Schultz examination was timed by the District Attorney's Office so it wasn't broken, that's all I can say.
>
> THE COURT: I'm sorry?
>
> [Attorney Walker]: That's all I can say. Schultz's examination was timed by the District Attorney's Office so it would not be broken. They decided to put

filler witnesses on and take him the next day and now -- and their reasoning was that they didn't want his examination broken, and the inability to consult with him as a prosecutor.

THE COURT: Are you planning on going out to the jail tonight?

[Attorney Walker]: I was going to consult with him on the preparation of my closings.

THE COURT: Going out to the jail tonight?

[Attorney Fisher]: My position would be, Judge, is the case law says that counsel cannot discuss any matters in the trial with the witness while he is on the stand and that's a defendant case.

THE COURT: Yeah.

[Attorney Walker]: I'm well aware of the case law. I'm just saying --

THE COURT: Do you want us to disregard the case law?

[Attorney Walker]: No, I just wanted a point for the record to say that the Commonwealth timed the questioning of Schultz based on their [sic] didn't want to break the questioning and wanted him available so they put two filler witnesses in.

. . . .

[Attorney Fisher]: What's the alternative? What are your suggestions

[Attorney Walker]: I don't have a suggestion. I made one of him staying up on the stand, but --

Notes of testimony, 6/11/14 at 303-306.

At the PCRA hearing with respect to the sequestration order, Attorney Walker testified on cross-examination that he did object to the trial court's directive that appellant not speak with his counsel until after his testimony was complete: "I think that record is abundantly clear that I was, in fact, objecting. I may have not used the term objection. But I said something to the effect of that I couldn't talk to him that I was upset about that and that the Commonwealth did something with Schultz." (Notes of testimony, 6/29/17 at 23-24.)

Attorney Walker further testified that appellant was "perfectly okay" with the trial court's sequestration order. (**Id.** at 25.) Attorney Walker stated that he did not plan to see appellant that night. (**Id.** at 26.) Attorney Walker also testified that after the conclusion of cross-examination the next day, he had the opportunity to speak with appellant, and appellant did not express any concerns over his inability to speak with Attorney Walker the night before. (**Id.** at 27.) When Attorney Walker talked with appellant at the break after his cross-examination, appellant had no input into the closing argument. (**Id.** at 28.)

Appellant testified that his only opportunity to speak with his counsel was during the brief mid-morning recess. (**Id.** at 147-148.) On cross-examination, when asked whether Attorney Walker objected to the sequestration order, appellant answered, "He questioned it, yes." (**Id.** at 156.)

In ruling on this issue, the PCRA court acknowledged that if appellant had been deprived of his right to counsel under the Sixth Amendment to the United States Constitution and trial counsel had not objected to the deprivation of constitutional rights, then review of the issue was properly a matter of collateral review. (PCRA court opinion, 12/1/17, at 32.) *See Commonwealth v. Kennedy*, 959 A.2d 916, 922 (Pa. 2008), *cert. denied*, 556 U.S. 1258 (2009).

However, the PCRA court determined that appellant's argument failed because his counsel, Attorney Walker, did object to the sequestration order. (PCRA court opinion, 12/1/17, at 32.) The PCRA court reasoned that while Attorney Walker did not say the words, "I object," his comments to the court were sufficient to constitute an objection and to preserve the issue for post-trial and appellate review. (*Id.* at 32-33.)

A review of the trial record confirms that Attorney Walker vigorously protested the trial court's sequestration order and engaged in argument with the trial court and opposing counsel. (Notes of testimony, 6/11/14 at 303-306.) Further, when he testified at the PCRA hearing, Attorney Walker unequivocally testified that he did object. (Notes of testimony, 6/29/17 at 23-24.) Also at the PCRA hearing, appellant conceded that Attorney Walker verbally questioned the order. (*Id.* at 156.)

In *Commonwealth v. Turner*, 450 A.2d 9, 11 (Pa.Super. 1982), this court held that defense counsel, in effect, made an objection to the

admissibility of a witness's testimony, even though the defense counsel did not utter the magic words, "I object." Therefore, Attorney Walker's comments were sufficient to constitute an objection. Consequently, appellant's argument that his counsel failed to object is without merit. Counsel cannot be considered ineffective for failing to assert an objection when counsel did raise the objection at trial. *See Commonwealth v. Johnson*, 828 A.2d 1009, 1015 (Pa. 2003). This court concludes that the record supports the PCRA court's factual findings on this issue and that the PCRA court did not err in making its legal conclusion. Appellant did not meet the first prong of the test for ineffective assistance of counsel as he did not raise a claim that has arguable merit.

Appellant next contends that his trial counsel were ineffective because they failed to object to Detective Schultz's testimony regarding his interpretations of the text messages, emails, phone calls, and Facebook entries by appellant, Dominick, and other witnesses which were beyond his competence and were extremely prejudicial to appellant. Because appellant's counsel did not object to this testimony, appellant argues that counsel was ineffective. (Appellant's brief at 30.) He asserts that this testimony violated Rule 602 of the Pennsylvania Rules of Evidence that permits a witness to testify only if he had personal knowledge of the matter. (*Id.* at 33-35.) Appellant asserts that Detective Schultz did not testify as to matters of his own personal knowledge and did not qualify as an expert witness under

Rule 702 of the Pennsylvania Rules of Evidence. (*Id.* at 35-36.) He could not give an opinion as a lay witness because his opinion was not "rationally based on his perception." (*Id.* at 37.) *See* Pa.R.E. 701. Appellant also asserts that his counsel compounded the error by eliciting on cross-examination Detective Schultz's opinions on appellant's credibility, intent, and actual guilt. (Appellant's brief at 44-51.)

Appellant asserts that his defense was that he was unaware Dominick had a gun and was unaware that Dominick intended to shoot Bonacci. He further asserts that the Commonwealth's theory was that appellant was guilty of third-degree murder based on appellant's statement, that appellant gave his gun to Dominick for Dominick to shoot Bonacci, and that appellant conspired with Dominick in a plot to kill Bonacci. As a result, appellant argues that the interpretation of the evidence as it applied to his specific intent and state of mind was the critical determination to be made by the jury. (Appellant's brief at 29.)

At the PCRA hearing, Attorney Comerford testified that he did not care if Detective Schultz testified as to what he thought was appellant's motive. He explained, "I didn't think it was credible. So call it strategy or what. I didn't care if he said that 25 times on the stand." (Notes of testimony, 6/29/17 at 65.) When asked why he did not object more often on hearsay grounds to Detective Schultz's testimony, Attorney Comerford explained, "You got [sic] to pick your battles. . . . I objected twice in . . . in four pages of

testimony. I mean, I think the objection was noted. And I respected the Judge's ruling." (*Id.* at 74.) Attorney Comerford also explained why he did not object to Detective Schultz's explanation of the significance of Dominick's text message that he would "snuff" Bonacci if he ever got "cocky around" him:

> I didn't think that was a credible assertion by Schultz two months before that they started planning this conspiracy to murder [Bonacci]. Is that what Schultz was saying? I thought it was confusing. I thought it was a stretch. And I wanted the ability on cross examination to give the jury my own interpretation.

*Id.* at 77.

Attorney Comerford further explained his overall strategy with respect to Detective Schultz:

> I thought his interpretations were unreasonable. I thought he would come across to the jury as dishonest because he only interpreted things that were favorable to him in a light favorable to the Commonwealth. And when there was [sic] obvious facts presented to him that were favorable to the defense, he refused to interpret them that way.

*Id.* at 78.

Attorney Comerford testified that when he cross-examined Detective Schultz, that he really did not care what his answers were because the questions supported the conclusions that he was ultimately looking to put forth to the jury. (*Id.* at 86.) According to Attorney Comerford, he did not object when Detective Schultz was asked for the significance of a particular text message or Facebook post because of 1) trial strategy, as he could then

ask a leading question on cross-examination, and 2) the vast majority of the questions related to facts that the defense conceded. (***Id.*** at 90-91.)

On cross-examination, Attorney Comerford further explained that it was his strategy to concede that appellant participated in a cover-up of the crime after it happened. (***Id.*** at 112.) In addition, he added that many of the text messages between Dominick and Bonacci indicated a problem between the two, which could indicate motive, and some text messages before the crime from Dominick indicated that he was having some sort of emotional breakdown unbeknownst to appellant. (***Id.*** at 113.) Attorney Comerford stated that he asked Detective Schultz questions on cross-examination knowing that his answer would favor the Commonwealth in an effort to have him lose credibility in the eyes of the jury. (***Id.*** at 128.)

The PCRA court determined that Detective Schultz was permitted to interpret the text message from Dominick to appellant that stated Dominick would "snuff" Bonacci if he got cocky as Dominick was stating he would kill him because he was testifying based on his own perception of the electronic communication under Rule 701 of the Pennsylvania Rules of Evidence. (PCRA court opinion, 12/1/17 at 47.) Even if Detective Schultz's testimony was objectionable, the PCRA court concluded that Attorney Comerford articulated a reasonable strategic reason for not objecting because he believed that Detective Schultz's claim that this text message placed appellant on notice that Dominick might kill Bonacci "was a stretch" and had a negative effect on

Detective Schultz's credibility. (*Id.* at 47-48.) The PCRA court further determined that appellant's counsel had a reasonable strategic basis not to object as often as appellant believes he should have. (*Id.* at 48.)

Appellant also asserts that after Attorney Comerford had Detective Schultz identify text messages between Bonacci and appellant that reflected a friendly relationship, Attorney Comerford asked Detective Schultz if he believed that appellant engaged in a conspiracy to kill Bonacci within five days after the last of these messages. Detective Schultz answered, "Absolutely." Appellant does not believe that was reasonable trial strategy. (Appellant's brief at 49.)

With respect to this issue, the PCRA court determined that Attorney Comerford's strategy to damage Detective Schultz's credibility by showing his unwillingness to concede any point favorable to appellant was reasonable and designed to promote appellant's interests. (PCRA court opinion, 12/1/17, at 52.)

With regard to the reasonable basis prong, a court will conclude that a strategy is not reasonable if an appellant proves that an alternative strategy offered a potential for success substantially greater than the course that was actually pursued. *See Commonwealth v. Spotz*, 18 A.3d 244, 260 (Pa. 2011). Counsel is not constitutionally required to put forth all possible objections at trial, and the reasonableness of counsel's performance is "not measured by an exercise in 'spot the objection,' as might occur in a law school

evidence examination." ***Commonwealth v. Spotz***, 870 A.2d 822, 832 (Pa. 2005). Here, the PCRA court did not err when it concluded that Attorney Comerford's strategy was reasonable because appellant did not prove that an alternative course had the potential of providing a substantially greater chance of success than the route chosen by counsel.

Appellant next contends that trial counsel provided ineffective assistance by failing to affirmatively recommend to him that he accept the third-degree murder plea bargain in light of the overwhelming evidence against him and given the fact that, based on his own testimony, he could be convicted of third-degree murder as the Commonwealth argued in its closing. (Appellant's brief at 57-58.)

In order for a petitioner to establish that counsel's ineffectiveness caused the petitioner to reject a guilty plea, the petitioner must show that but for the ineffective advice of counsel, there is a reasonable probability that the petitioner would have accepted the plea, the prosecution would not have withdrawn the plea offer, that the court would have accepted its terms, and that the conviction or sentence, or both, under the terms of the offers, would have been less severe than the judgment and sentence that were actually imposed. ***Commonwealth v. Steckley***, 128 A.3d 826, 832 (Pa.Super. 2015), ***appeal denied***, 140 A.3d 13 (Pa. 2016), citing ***Lafler v. Cooper***, 566 U.S. 156, 163 (2012).

At the PCRA hearing, appellant testified that Attorney Comerford informed him that the Commonwealth made him an open plea offer of third-degree murder and told him the sentence at the very least would be for 10 years. Appellant testified that Attorney Comerford did not specifically tell him that 20 to 40 years would be the sentence. (Notes of testimony, 6/29/17 at 148.) Appellant further testified that his counsel did not inform him that he could be convicted of third-degree murder even if the jury believed his testimony, but in its closing, the Commonwealth asserted that based upon the law and appellant's own testimony, he was guilty of third-degree murder. (*Id.* at 150.) When questioned as to whether he would have taken a third-degree murder plea if his counsel had advised him that the story appellant told them and told the jury would be sufficient to convict him of third degree murder, appellant replied, "I definitely would have considered it." (*Id.*) Appellant reported that Attorney Comerford did not give appellant a recommendation as to whether he should accept the plea when Attorney Comerford presented it to him. (*Id.* at 151.)

Attorney Walker testified that early on, appellant told him that he would not entertain a plea offer. (*Id.* at 30.) Attorney Walker recalled that the final plea offer was for third-degree murder with a recommendation of 20 to 40 years. (*Id.* at 31.)

Attorney Comerford testified that the Commonwealth would not offer third-degree murder unless the trial court agreed to a 20 to 40-year sentence.

(*Id.* at 57.) Attorney Comerford testified that he did not give appellant an estimate of the percentage chance of winning but "[appellant] knew there was a very real chance of being convicted of first degree murder." (*Id.* at 106.) Attorney Comerford recalled how appellant reacted when he was presented with the plea offer:

> He turned it down. He was angry. And then I communicated to him that, you know, [appellant], you have to understand as one of your attorneys, I'm not trying to come out here and fight with you. I have to communicate with you what is on the table because it's ultimately your life. I go home after this no matter what."

*Id.* at 107-108.

Attorney Comerford explained when appellant rejected the plea offer, "he didn't consider it. And I doubt he would take it as if he sits here today. I doubt he would take 20 to 40." (*Id.* at 108-109.) Attorney Comerford testified that he did not advise appellant to reject the offer. (*Id.*)

The PCRA court concluded that, based on the credible evidence of Attorney Comerford and the applicable case law, appellant failed to prove that his former attorneys were ineffective in connection with the plea negotiation process. (PCRA court opinion, 12/1/17, at 60-61.)

As the PCRA court stated in its comprehensive opinion, appellant failed to establish that there was a reasonable probability that he would have accepted the plea offer if his counsel had advised him that the story he told them and told the jury would be sufficient to convict him of third-degree

murder. When asked that specific question, appellant replied, "I definitely would have considered it." (*Id.* at 150.) Merely considering an offer is not the same as a reasonable probability that appellant would have accepted the plea. For instance, in ***Steckley***, Steward Steckley, Jr., testified at his PCRA hearing that he would have pleaded guilty had he known about a 25-year mandatory minimum sentence. ***Steckley***, 128 A.3d at 830. Further, here, in contrast to ***Steckley***, Attorney Walker and Attorney Comerford did not admit that they were ineffective in failing to advise appellant to accept a plea offer as the attorney did in ***Steckley***. Appellant has failed to establish that his counsel was ineffective with respect to the possible plea agreement. Furthermore, he has failed to prove that counsel was ineffective in any of the issues he raises.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/9/2018