J-S22015-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
:          PENNSYLVANIA
:
v.                        :
:
:
LLOYD RICHARDSON          :
:
Appellant          :   No. 1482 EDA 2021

Appeal from the PCRA Order Entered June 17, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002838-2016

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
:          PENNSYLVANIA
:
v.                        :
:
:
LLOYD RICHARDSON          :
:
Appellant          :   No. 1483 EDA 2021

Appeal from the PCRA Order Entered June 17, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002839-2016

BEFORE: BOWES, J., McCAFFERY, J., and SULLIVAN, J.

MEMORANDUM BY BOWES, J.:            **FILED JULY 27, 2022**

Lloyd Richardson appeals from the June 17, 2021 order dismissing his petition for relief pursuant to the Post-Conviction Relief Act ("PCRA"), which was filed in the above-captioned cases. We affirm.

The PCRA court has authored the following apt summation of the factual and procedural history of this case:

On December 31, 2015, around 4:19 p.m., police officers responded to a radio call for a person shooting a gun on the 4000 block of North Seventh Street in Philadelphia. Upon arrival, police observed a victim, later identified as Joanna Colon, suffering from gunshot wounds to her face, neck, and shoulders. Police also observed a second victim, Maria Del Carmen Ramos (Ms. Colon's mother), suffering from gunshot wounds to her right shoulder. Both victims positively identified Appellant as the assailant and reported that they knew him as their neighbor.

While the victims were transported to the hospital, the police were directed to the property at 4433 North Seventh Street by a man who identified his son, Appellant, as the individual who shot the two women. Appellant's father also informed the officers that Appellant was currently inside the North Seventh Street residence. Officers were met by an additional witness, Angelita Pagan, who identified Appellant (her husband) as the gunman. [She] explained that Appellant thought his two victims were "someone else."

Police went to the North Seventh Street property, where they recovered a 12-gauge Smith & Wesson shotgun, a brown rifle bag, and several spent shell casings. Police observed Appellant sitting inside the living room of the property and immediately arrested him. It was later determined that Appellant was ineligible to possess a firearm at the time of the underlying criminal episode, due to a prior conviction for possession with intent to distribute.

Based on these facts, on April 11, 2017, Appellant entered a non-negotiated guilty plea to [one count of attempted murder and one count of person not to possess a firearm at CP-51-CR-0002838-2016 ("Docket 2838") and one count of attempted murder at CP-51-CR-0002839-2016 ("Docket 2839")]. Sentencing was deferred for the preparation of a presentence investigation report ("PSI") and mental health evaluation.

At Appellant's sentencing hearing on September 8, 2017, defense counsel presented the testimony of Allan M. Tepper, J.D., Psy.D., who testified that after evaluating Appellant and reviewing his record, he believed Appellant suffered from intermittent periods of "regressed" and "psychotic" psychological states. Dr. Tepper also opined that Appellant suffered from post-traumatic stress disorder, due to an incident in 2013 when Appellant was robbed and shot as he was sitting in his vehicle. Dr. Tepper also authored

a report, in which he opined that on the day of the underlying incident, "[Appellant] was functioning in a regressed psychological state. He was experiencing severe feelings of suspicion and paranoia, and he was under the mistaken belief that individuals were coming to his home to harm or kill him." Despite these diagnoses, Dr. Tepper did not conclude that Appellant was legally insane or "mentally ill," within the meaning of Pennsylvania's mental illness statute. **See** 18 Pa.C.S. § 314[; **see also** N.T. Sentencing, 9/8/17, at 30.]

The trial court considered Dr. Tepper's testimony and determined that Appellant's mental health concerns warranted a mitigated sentence. Accordingly, [the trial court] sentenced Appellant to an aggregate term of twenty to forty [years of] incarceration (rather than the already mitigated term of thirty to sixty years suggested by the Commonwealth). The trial court also ordered Appellant to undergo mental health treatment.

On September 15, 2017, Appellant filed a post-sentence motion asking the trial court to reconsider his sentence. On November 21, 2017, the trial court denied Appellant's motion as it related to Docket 2838. However, it reduced Appellant's sentence under Docket 2839 to fifteen to thirty [years of] confinement, thereby reducing his aggregate sentence to eighteen and one-half to thirty-seven years of confinement.

PCRA Court Opinion, 9/20/21, at 1-3 (cleaned up).

Thereafter, this Court affirmed Appellant's judgment of sentence and our Supreme Court denied allowance of appeal from that holding. **See Commonwealth v. Richardson**, 215 A.3d 629 (Pa.Super. 2019) (non-precedential decision at 3), *appeal denied*, 217 A.3d 192 (Pa. 2019).

Appellant filed a timely *pro se* PCRA petition at both dockets. PCRA counsel was appointed to represent Appellant and an amended petition was filed on his behalf. In pertinent part, Appellant's amended petition asserted that Appellant's plea counsel was ineffective for advising Appellant to plead

guilty instead of advising Appellant to plead "guilty but mentally ill" ("GBMI") pursuant to 18 Pa.C.S. § 314(b). *See* Amended PCRA Petition, 12/5/20, at ¶ 9 ("[Plea] counsel failed to provide effective assistance of counsel by failing to advise [Appellant] to plead [GBMI] instead of entering an open guilty plea."). Specifically, Appellant averred that his guilty pleas were "unlawfully induced based on counsel's ineffectiveness." *Id*. at ¶ 10.

The PCRA court filed notice of its intent to dismiss Appellant's petition without a hearing pursuant to Pa.R.Crim.P. 907. After receiving no response, the PCRA court dismissed the petition. *See* Order, 6/17/21, at 1.

Appellant filed timely notices of appeal at each docket. Both Appellant and the PCRA court have complied with their respective obligations pursuant to Pa.R.A.P. 1925. On October 25, 2021, this Court consolidated the appeals *sua sponte* pursuant to Pa.R.A.P. 513.

Appellant has raised four issues for our consideration:

1. Whether the PCRA court erred by dismissing the PCRA petition when clear and convincing evidence was presented to establish that trial counsel was ineffective for failing to advise Appellant to plead [GBMI] instead of entering an open guilty plea?

2. Whether the PCRA court erred by dismissing the PCRA petition when clear and convincing evidence was presented to establish violations of Appellant's constitutional rights under the United States and Pennsylvania Constitutions?

3. Whether the PCRA court erred by dismissing the PCRA petition when clear and convincing evidence was presented to establish that trial counsel's ineffectiveness was the causal nexus of Appellant's unlawfully induced guilty pleas?

4. Whether the PCRA court erred by failing to grant an evidentiary hearing?

Appellant's brief at 8 (cleaned up). Although presented as four separate questions, Appellant has raised only two distinct claims, namely that the PCRA court erred by: (1) denying Appellant's claim that ineffective assistance of counsel unlawfully induced him to enter a guilty plea; and (2) dismissing Appellant's petition without an evidentiary hearing. We will address these issues in turn, beginning with the alleged ineffectiveness.

In reviewing the propriety of an order denying PCRA relief, "our standard of review calls for us to determine whether the ruling of the PCRA court is supported by the record and free of legal error." *Commonwealth v. Wharton*, 263 A.3d 561, 567 (Pa. 2021). Here, Appellant's claims are predicated upon plea counsel's alleged ineffectiveness. Where a defendant enters his plea on advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of criminal attorneys. *See Commonwealth v. Kelley*, 136 A.3d 1007, 1013 (Pa.Super. 2016). Accordingly,

> [t]he standard for post-sentence withdrawal of guilty pleas dovetails with the arguable merit/prejudice requirements for relief based on a claim of ineffective assistance of plea counsel, ... under which the defendant must show that counsel's deficient stewardship resulted in a manifest injustice, for example, by facilitating entry of an unknowing, involuntary, or unintelligent plea. This standard is equivalent to the "manifest injustice" standard applicable to all post-sentence motions to withdraw a guilty plea.

*Id*. Thus, Pennsylvania law provides that "[a] defendant is permitted to withdraw his guilty plea under the PCRA if ineffective assistance of counsel caused the defendant to enter an involuntary plea of guilty." ***Commonwealth v. Rathfon***, 899 A.2d 365, 369 (Pa.Super. 2006).

Counsel is presumed to be effective and a PCRA petitioner bears the burden of proving otherwise. ***See Commonwealth v. Flor***, 259 A.3d 891, 902 (Pa. 2021). In order to prevail on such a claim in the context of a guilty plea, Appellant must prove that counsel's advice was outside "the range of competence demanded of attorneys in criminal cases," such that the plea was involuntary. ***Commonwealth v. Velazquez***, 216 A.3d 1146, 1150 (Pa.Super. 2019) (cleaned up). Appellant must also prove prejudice by demonstrating "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty[.]" ***Id***. Where a claim of ineffectiveness is predicated upon a failure to advise a client to plead GBMI, the petitioner must also establish, *inter alia*, that the court would have accepted a GBMI plea. ***See Commonwealth v. Andrews***, 158 A.3d 1260, 1266 (Pa.Super. 2017); ***see also Commonwealth v. Steckley,*** 128 A.3d 826, 832 (Pa.Super. 2015) ("[A] post-conviction petitioner seeking relief on the basis that ineffective assistance of counsel caused him to reject a guilty plea must demonstrate . . . a reasonable probability that . . . the court would have accepted its terms[.]").

The statute governing GBMI pleas provides as follows:

**(b) Plea of guilty but mentally ill.**--A person who waives his right to trial may plead guilty but mentally ill. No plea of guilty

but mentally ill may be accepted by the trial judge until he has examined all reports prepared pursuant to the Rules of Criminal Procedure, has held a hearing on the sole issue of the defendant's mental illness at which either party may present evidence and is satisfied that the defendant was mentally ill at the time of the offense to which the plea is entered. If the trial judge refuses to accept a plea of guilty but mentally ill, the defendant shall be permitted to withdraw his plea. A defendant whose plea is not accepted by the court shall be entitled to a jury trial, except that if a defendant subsequently waives his right to a jury trial, the judge who presided at the hearing on mental illness shall not preside at the trial.

**(c) Definitions.**--For the purposes of this section and 42 Pa.C.S. § 9727 (relating to disposition of persons found guilty but mentally ill):

(1) **"Mentally ill."** One who as a result of mental disease or defect, lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law.

(2) **"Legal insanity."** At the time of the commission of the act, the defendant was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing or, if he did know it, that he did not know he was doing what was wrong.

18 Pa.C.S. § 314(b)-(c)(1).

The definitions of "mentally ill" and "legal insanity" are not legally coextensive. Specifically, "[o]ur courts have differentiated mental illness from legal insanity by distinguishing between the appreciation of wrongfulness factor under the mentally ill definition and the lack of knowledge of wrongfulness aspects of the legal insanity definition." *Commonwealth v. Andre*, 17 A.3d 951, 961-62 (Pa.Super. 2011). In basic terms, individuals who are mentally ill are sick but remain criminally responsible for their actions.

*See Commonwealth v. Trill*, 543 A.2d 1106, 1123 (Pa.Super. 1988). Those adjudged to be legally insane are "laboring under a defect of reason so grave as not to have known the nature and quality of the acts" such that they were "incapable of forming the intent necessary to impose criminal liability." *Id*.

Based on our review of this case law, it is clear that the court would have been required to conclude that Appellant lacked "substantial capacity to appreciate the wrongfulness of his conduct" at the time of his offenses in order to accept a potential GBMI plea.[1] *Accord* 18 Pa.C.S. § 314(b) ("No plea of [GBMI] may be accepted by the trial judge . . . is satisfied that the defendant was **mentally ill** at the time of the offense to which the plea is entered."(emphasis added)). In relevant part, Appellant asserts that the court could have concluded that he was mentally ill within the meaning of § 314(b) upon the opinions of Dr. Tepper, alone. **See** Appellant's brief at 18 ("The court could conclude from the report of Dr. Tepper that [A]ppellant did indeed lack the substantial capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law."). We disagree.

---

[1] Had such a tact been successful, Appellant would still have been subject to the same potential penalties as if he had been convicted or simply pleaded guilty. **See** 42 Pa.C.S. § 9727(a) ("A defendant . . . whose plea of [GBMI] is accepted . . . may have any sentence imposed on him which may lawfully be imposed on any defendant convicted of the same offense."). However, this statute would require that Appellant receive "treatment as is psychiatrically or psychologically indicated" for his particular illness. 42 Pa.C.S. § 9727(b)(1).

During his testimony at Appellant's sentencing, Dr. Tepper explicitly stated that he could not conclude that Appellant was **legally insane** but offered no explicit opinion as to whether Appellant was **mentally ill**. *See* N.T. Sentencing, 9/8/17, at 30 ("I was asked could I give an opinion whether he was **legally insane** at the time of the incident, and I said I could not give that opinion. I mean, that was my role." (emphasis added)). Similarly, Dr. Tepper's written report offers no particular opinion as to whether Appellant was mentally ill at the time of the underlying offenses. *See* Amended PCRA Petition, 12/5/20, at Exhibit A. To the extent Appellant relies upon Dr. Tepper's testimony as the substantive basis of his argument, he appears to have misapprehended the basic nature of his testimony.

Nonetheless, we note that Dr. Tepper did testify and opine extensively in the trial court concerning Appellant's mental health, state of mind, and relevant medical history. *Id*.; *see also* N.T. Sentencing, 9/8/17, at 7-33. Considering this evidence in the context of the arguments presented in Appellant's amended PCRA petition, the same court that presided over Appellant's sentencing expressly indicated that it would **not** have accepted a plea of GBMI in this matter. *See* PCRA Court Opinion, 9/20/21, at 12 ("[T]his court is not convinced that it would have determined [Appellant] was 'mentally ill,' within the meaning of 18 Pa.C.S.A. § 314."). Appellant does not assert that any additional relevant evidence exists that would support the necessary finding of mental illness pursuant to § 314(b).

Based on the foregoing, Appellant cannot establish that the trial court would have accepted a GBMI plea in his case. Consequently, he cannot succeed upon his ineffectiveness claim. *See Andrews*, *supra* at 1266; *Steckley*, *supra* at 832. Therefore, we discern no error of law or abuse of discretion in the PCRA court's denial of Appellant's petition.

In his remaining issue, Appellant asserts that the PCRA court erred by declining to hold an evidentiary hearing. Pursuant to Rule 907, the PCRA court may adjudicate a petition for post-conviction relief without a hearing if it concludes that "there are no genuine issues concerning any material fact" such that the defendant is not entitled to PCRA relief. Pa.R.Crim.P. 907(1); *see also Commonwealth v. Harris*, 852 A.2d 1168, 1180 (Pa.Super. 2004) (same). In order to obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, "an appellant must show that he raise a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing." *Commonwealth v. Blakeney*, 108 A.3d 739, 750 (Pa. 2014).

Although Appellant argues that the PCRA court should have held an evidentiary hearing, he does not identify any specific issues of material fact that require further elucidation. *See* Appellant's brief at 19 (asserting baldly that "[t]he claims were legitimate, based on fact and supported by legal precedent"). After reviewing the underlying claim of ineffectiveness above, we can identify no outstanding factual issues that would warrant a hearing in

light of the lower court's rejection of Appellant's arguments pursuant to 18 Pa.C.S. § 314(b).  Thus, we discern no error of law or abuse of discretion in the PCRA court's dismissal of Appellant's petition without a hearing.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/27/2022

- 11 -