J-S29021-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STEVEN JOHN TROHA | : | |
| | : | |
| Appellant | : | No. 159 WDA 2024 |

Appeal from the PCRA Order Entered January 4, 2024
In the Court of Common Pleas of Elk County Criminal Division at No(s):
CP-24-CR-0000416-2017

BEFORE:  DUBOW, J., KING, J., and BENDER, P.J.E.

MEMORANDUM BY KING, J.:                          **FILED: November 14, 2024**

Appellant, Steven John Troha, appeals from the order entered in the Elk County Court of Common Pleas, which denied his first petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1]  We affirm.

This Court has previously set forth some of the relevant facts and procedural history of this case as follows:

> This case involves the sexual abuse of a minor female, born in August 2007 ("Victim" or "the Victim").  [Appellant] and the Victim's mother ("Mother") had been close friends for several years.  On September 12, 2017, Mother and the 10-year-old Victim were at [Appellant's] home.  At some point, Mother went upstairs and found [Appellant] at the top of the stairs, with his pants around his ankles, his penis erect, and the Victim standing near him, holding two dolls.  Following an altercation with [Appellant], Mother left the residence with Victim and called 911.  Police arrived shortly thereafter.

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

Mother and Victim were taken to the police station to ascertain whether the Victim was in ongoing danger. As part of the investigation, Victim was taken to the Children's Advocacy Center in McKean County for a forensic interview. On September 29, 2017, Police arrested [Appellant] and charged him with committing various sexual offenses against Victim over the course of several years.[2] Following [Appellant's] arrest, Victim gave another interview in November 2018[.]2

> 2 The record reflects that the 2018 interview occurred after [Appellant] had waived his right to a preliminary hearing, in exchange for an on-the-record interview with Victim, the District Attorney, and [Appellant's] counsel. The interview was reduced to an unofficial transcript.

On October 30, 2019, following a jury trial, [Appellant] was convicted [on all counts in the amended criminal information]. The trial court sentenced [Appellant] to an aggregate sentence of thirteen to twenty-six years in prison, followed by two years of probation.

_____

2 As discussed in greater detail **infra**, the District Attorney's Office ("DA's Office") originally charged Appellant with 20 counts each of indecent assault, corruption of minors, and indecent exposure. On or around November 29, 2018, the DA's Office offered Appellant a negotiated plea deal to one count each of indecent exposure and corruption of minors in exchange for a sentence of 6 months to 24 months (less one day) of imprisonment, plus three years' probation. Appellant rejected that plea offer against trial counsel's advice. Thereafter, due to a conflict of interest, the Attorney General's Office ("AG's Office") took over prosecution of the case. Once that occurred, the plea deal previously offered by the DA's Office was no longer available to Appellant. The AG's Office subsequently filed an amended criminal information charging Appellant with three counts each of involuntary deviate sexual intercourse ("IDSI"), indecent exposure, and indecent assault, two counts of unlawful contact with a minor, and one count each of corruption of minors and endangering the welfare of a child. On or around July 25, 2019, the AG's Office offered Appellant a new plea deal to one count each of IDSI, unlawful contact with a minor, indecent assault, corruption of minors, and indecent exposure, in exchange for an aggregate sentence of 12 to 24 years' imprisonment, followed by a term of probation to be set by the court. Appellant also rejected this plea offer, opting to go to trial.

*Commonwealth v. Troha*, No. 888 WDA 2020, unpublished memorandum at 1-2 (Pa.Super. filed Nov. 9, 2021) (internal citations omitted). This Court affirmed Appellant's judgment of sentence on November 9, 2021. *See id.* Appellant did not seek further direct review.

On December 6, 2022, Appellant timely filed a PCRA petition. Appellant filed an amended PCRA petition on February 8, 2023. The court held a PCRA hearing on June 28, 2023. On January 4, 2024, the court denied PCRA relief. Appellant timely filed a notice of appeal on January 26, 2024. On February 2, 2024, the court ordered Appellant to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b), which Appellant timely filed on February 20, 2024.

Appellant raises three issues for our review:

> Was trial counsel materially ineffective when he failed to properly examine [Victim] at trial, after she testified that she put "tails" up [Appellant's] butt multiple times, concerning a prior inconsistent statement indicating that she had never touched his butt, and he failed to preserve, raise, present and support such issues for review?
>
> Was trial counsel materially ineffective when, during plea negotiations and before [Appellant] declined or failed to timely accept the district attorney's offer, he failed to timely advise [Appellant] or to ensure that he was advised about the potential for or propriety of IDSI charges or their impact for sentencing purposes?
>
> Was trial counsel materially ineffective when he failed to impeach, confront, and/or cross-examine [Victim's] mother at trial with or regarding her pending charges?

(Appellant's Brief at 4-5).

"Our standard of review of [an] order granting or denying relief under the PCRA calls upon us to determine whether the determination of the PCRA court is supported by the evidence of record and is free of legal error." *Commonwealth v. Parker*, 249 A.3d 590, 594 (Pa.Super. 2021) (quoting *Commonwealth v. Barndt*, 74 A.3d 185, 191-92 (Pa.Super. 2013)). "The PCRA court's factual findings are binding if the record supports them, and we review the court's legal conclusions *de novo*." *Commonwealth v. Prater*, 256 A.3d 1274, 1282 (Pa.Super. 2021), *appeal denied*, ___ Pa. ___, 268 A.3d 386 (2021). Further, where the PCRA court makes credibility determinations, we are bound by them if they are supported by the record. *Commonwealth v. Mojica*, 242 A.3d 949 (Pa.Super. 2020), *appeal denied*, 666 Pa. 290, 252 A.3d 595 (2021).

"Counsel is presumed to have rendered effective assistance." *Commonwealth v. Hopkins*, 231 A.3d 855, 871 (Pa.Super. 2020), *appeal denied*, 663 Pa. 418, 242 A.3d 908 (2020).

> [T]o establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043 (Pa.Super. 2019),

- 4 -

*appeal denied*, 654 Pa. 568, 216 A.3d 1029 (2019) (internal citations and quotation marks omitted).

In his first issue, Appellant argues that trial counsel failed to cross-examine Victim at trial with a prior inconsistent statement. Appellant concedes that trial counsel attempted to introduce the prior inconsistent statement but was unsuccessful in his attempt to do so. Appellant stresses that trial counsel's efforts were incomplete, and he failed to provide the trial court, and this Court on direct appeal, with a complete record or relevant authority. Appellant emphasizes the inconsistency in Victim's testimony where Victim testified at trial that "a couple times there were these tails things, and [Appellant] would tell me to put it like up his butt" and that this probably happened "50 times," but that in an earlier interview Victim had denied ever touching Appellant's butt. (**See** Appellant's Brief at 31) (citing R.R. 145a-146a; 716a-17a, 885a).

Appellant insists that although trial counsel attempted to impeach Victim with her prior statement in the interview, counsel's proffer regarding Victim's prior inconsistent statement was incomplete and insufficient. Specifically, Appellant claims that trial counsel merely summarized that "[t]he other mention is that [Victim] never touched [Appellant's] butt" but counsel did not provide the court with the precise wording of the question and answer in the earlier interview. (**See id.** at 32). Appellant contends that the trial court ultimately found no inconsistency and excluded the prior statement because

"there was no parallel question directed at [Victim] during her interview." (***Id.***) Appellant maintains that "[t]here is no requirement that an inconsistency arise in response to a particular question or be phrased in the same way as the trial testimony it contradicts." (***Id.***) Appellant also highlights that during the prior interview, Victim denied having anything else to tell trial counsel, which Appellant suggests indicates Victim's denial of touching Appellant's butt or inserting tails in his butt.

Appellant claims that Victim's prior statement was inconsistent with her trial testimony and would have been relevant and admissible for its impeachment value under Pa.R.E. 613(a). Appellant posits that the prior inconsistent statement also would have been relevant and admissible as substantive evidence under Pa.R.E. 803.1(1)(c). Appellant submits that trial counsel had no reasonable strategic basis for failing to read the prior statement into the record verbatim or introducing the tape and the transcript. Likewise, Appellant suggests that trial counsel had no reasonable strategic basis for failing to provide the court with relevant caselaw that would have persuaded the court to admit Victim's prior statement. Appellant proclaims that he suffered prejudice at trial and on appeal based on trial counsel's actions. Appellant concludes trial counsel was ineffective on these grounds, and this Court must grant relief. We disagree.

Pennsylvania Rule of Evidence 613 states: "A witness may be examined concerning a prior inconsistent statement made by the witness to impeach the

witness's credibility. The statement need not be shown or its contents disclosed to the witness at that time, but on request, that statement or contents must be shown or disclosed to an adverse party's attorney." Pa.R.E. 613(a). Additionally, Pennsylvania Rule of Evidence 803.1 provides that certain prior inconsistent statements are not excluded by the rule against hearsay if the declarant testifies and is subject to cross-examination about the prior statement. Specifically, such statement is admissible as substantive evidence if the prior statement by a declarant-witness is inconsistent with the declarant-witness's testimony and was given under oath, is a writing signed and adopted by the declarant, or is a verbatim contemporaneous electronic recording of an oral statement. Pa.R.E. 803.1.

In **Commonwealth v. Brown**, 538 Pa. 410, 648 A.2d 1177 (1994), on which Appellant relies, the appellant alleged that trial counsel was ineffective for failing to object to the prosecution's questioning of Detective Harris during the Commonwealth's rebuttal. The appellant claimed that "the detective's statement that [a witness, Harriet] Carter never told him that appellant worked in maintenance with her was without proper foundation as he never asked her whether she worked with him." *Id.* at 426, 648 A.2d at 1185. The Supreme Court rejected this argument as meritless, stating:

> The detective was testifying about inconsistencies between Carter's trial testimony and the written statement she had given the police during the investigation. Her written pretrial statement that all appellant did for money was hacking[, which meant operating an unlicensed taxi service,] clearly contradicted the fact that she worked with

- 7 -

him five nights a week on a maintenance job. There is no requirement that the inconsistency arise in response to a particular question or that the inconsistency be phrased in the same way as the trial testimony it contradicts. A prior statement is admissible for impeachment so long as it is inconsistent with trial testimony.

*Id.* at 426-27, 648 A.2d at 1185 (internal citation omitted).

Instantly, Appellant challenged the trial court's exclusion of Victim's alleged prior inconsistent statement on direct appeal. In evaluating that claim of error, this Court discussed the trial court's evidentiary ruling as follows:

[Appellant] first argues that the trial court erred by sustaining the Commonwealth's objection and prohibiting [Appellant] from introducing … Victim's prior statements during her November 6, 2018, interview. [Appellant] posits that Victim's trial testimony, *i.e.*, that … Victim had placed the tails into his rectum, was contradicted by Victim's statements during the 2018 interview, wherein she allegedly stated that [Appellant] had inserted the tails into his rectum himself, and that she had never touched his butt. [Appellant] asserts that the recorded statement in the 2018 interview should have been admissible as substantive evidence and for purposes of impeachment pursuant to Pa.R.E. 803.1.[4]

> [4] [Appellant's] argument conflates Pa.R.E. 803.1 (relating to the admissibility of a witness's prior inconsistent statement as an exception to the rule against hearsay) and Pa.R.E. 613 (relating to the admissibility of a witness's prior inconsistent statement to impeach witness credibility). On the day of trial, before the jury had entered the court room, [Appellant] argued that the interview was nonhearsay pursuant to Pa.R.E. 1003, which does not correspond to a Rule of Evidence. In response, the Commonwealth argued that [Appellant] previously had assured the Commonwealth that he would not seek to use the interview as substantive evidence, and that if he sought to use it as substantive evidence, the Commonwealth would have filed a motion *in limine* to

- 8 -

seek its preclusion. When [Appellant] sought to have the interview admitted at trial, it was for impeachment purposes, and there was no further discussion of nonhearsay or the admission of the interview as substantive evidence. Moreover, it does not appear the trial court ruled on whether the interview was admissible as substantive evidence, because it found the interview was not a prior inconsistent statement.

According to [Appellant], the recording was an on-the-record audiotaped interview with the then-Elk County District Attorney; thus, [Appellant argues that] Victim's statement that [Appellant] had inserted the tails into his own rectum should have been admitted. [Appellant] argued that the trial court erred by requiring that … Victim's statement "be tendered in response to a 'parallel question' as a prerequisite for [Appellant] using it to impeach her and moving for its admission as substantive evidence."

\* \* \*

The portion of the 2018 interview, read at sidebar, included no statement by … Victim as to whether [Appellant] had asked … Victim to insert the tails into his rectum, or whether … Victim had inserted any tails into his rectum.[6] Indeed, the proffered statement from the 2018 interview, *i.e.*, that [Appellant] had inserted a tail into his rectum on at least one occasion is not inconsistent with … Victim's trial testimony that she also had inserted the tails into his rectum. As a result, [Appellant] is due no relief on his first claim of error.

[6] …[T]he certified record does not contain a copy of the audio recording of the interview, nor does it include a transcript of it. As such, we may consider **only** the portion of the interview that was read into the record.

***Troha, supra*** at 3-8 (internal citations and some internal footnotes omitted)

(emphasis in original).

In evaluating Appellant's related ineffectiveness claim, the PCRA court

- 9 -

reasoned:

> The ruling by the [c]ourt, which has been sustained by the Pennsylvania Superior Court, was vigorously opposed by competent and prepared trial counsel. [Trial counsel] did not "give up" on the point without a strenuous effort. The [c]ourt ruled that it was not admissible (the prior statement was in response to a question that was not parallel with the questioning at trial. The witness clearly could have inserted the "tails" without making skin-to-skin contact with [Appellant], and there was no evidence how the witness interpreted a "touch" at the time of the earlier statement or at the trial). It was adverse to [Appellant], but the matter was hotly contested and vigorously argued by [trial counsel] on behalf of [Appellant]. To assert that the outcome would have been substantially different had [trial counsel] followed some alternate course, or introduced the text of the earlier statement, is without merit, and will not result in PCRA relief.

(PCRA Court Opinion, filed 1/4/24, at 2). The court elaborated on this analysis

in its Rule 1925(a) opinion, as follows:

> Trial counsel…was strenuous and nearly insistent that he be permitted to use prior statements of [Victim] to impeach her. The trial court ruled that the prior statements were not wholly or substantially parallel … to allow for the two questions to be the foundation for impeachment. The witness just had not been asked detailed enough questions at the time of her earlier statement. The court denied trial counsel the opportunity to use the prior statement.
>
> To now suggest that trial counsel was ineffective, for not ignoring the ruling of the court, and forging on, in the face of the court's ruling to not allow it, would not have resulted in any advantageous results for [Appellant]. The ruling was made. The ruling was subsequently tested on appeal, and sustained by the Superior Court.

(Rule 1925(a) Opinion, filed 4/4/24, at 1-2). The record supports the PCRA

court's conclusion that Appellant is not entitled to relief. ***See Parker, supra***.

Unlike in **Brown, supra**, where Carter's trial testimony that the appellant worked with him in a maintenance job five nights a week was inconsistent with her prior statement that the appellant only did hacking for a living, we agree with the PCRA court that Victim's prior statement in this case is not necessarily inconsistent with her trial testimony. **Compare Brown, supra**. As this Court noted on direct appeal, the fact that Victim stated in the prior interview that Appellant inserted the tails into his own rectum does not mean that Victim did not also perform that act on Appellant. Further, as the PCRA court observed, Victim could have inserted the tails into Appellant's rectum without making skin-to-skin contact with Appellant's butt. Thus, Appellant failed to demonstrate that the prior statement was actually inconsistent to warrant its admission under either Rule 613(a) or 803.1. **See** Pa.R.E. 613(a); 803.1. Consequently, Appellant's ineffectiveness claim lacks arguable merit. **See Sandusky, supra**.

Moreover, under the facts of this case, we cannot say that Appellant suffered prejudice in any event. **See Sandusky, supra**. As the Commonwealth states: "it is highly unlikely that the jury would have found a twelve-year-old victim's uncertainty about whether her insertion of an object into [Appellant's] anus would have constituted, in her mind, 'touching his butt' to give rise to reasonable doubt[.]" (Commonwealth's Brief at 17). In other words, there was no reasonable likelihood of a different outcome had trial counsel been permitted to introduce Victim's prior statement. **See**

***Sandusky, supra***. Thus, Appellant's first issue on appeal merits no relief.

In his second issue, Appellant contends that on November 29, 2018, the Commonwealth offered Appellant a plea deal to corruption of minors and indecent exposure in exchange for county jail time and probation. Appellant maintains that trial counsel discussed the proposed plea bargain with Appellant and counsel tried to negotiate for lesser jail time. Appellant complains that trial counsel did not timely advise Appellant or ensure that he was advised about the potential for the Commonwealth to add IDSI charges, or what impact such charges would have on his sentencing exposure. Appellant insists that counsel had no reasonable basis for failing to anticipate the potential for added IDSI charges and discussing same with Appellant. Appellant claims that counsel's advice for Appellant to accept the plea offer because things could get "worse" was too vague to allow Appellant to make a properly informed decision. Appellant argues that he suffered prejudice because he rejected the Commonwealth's plea offer but would have accepted it if he knew the Commonwealth could later add IDSI charges which would significantly increase his sentencing exposure. Appellant concludes that counsel was ineffective on these grounds, and this Court must grant relief. We disagree.

Our Supreme Court has explained:

> [A] post-conviction petitioner seeking relief on the basis that ineffective assistance of counsel caused him or her to reject a guilty plea must demonstrate the following circumstance [to succeed on the prejudice prong of the ineffectiveness

test]:

> But for the ineffective advice of counsel there is a
> reasonable probability that the plea offer would have
> been presented to the court (*i.e.*, that the defendant
> would have accepted the plea and the prosecution
> would not have withdrawn it in light of intervening
> circumstances), that the court would have accepted
> its terms, and that the conviction or sentence, or both,
> under the offer's terms would have been less severe
> than under the judgment and sentence that in fact
> were imposed.

***Commonwealth v. Steckley***, 128 A.3d 826, 832 (Pa.Super. 2015), *appeal denied*, 636 Pa. 640, 140 A.3d 13 (2016) (quoting ***Lafler v. Cooper***, 566 U.S. 156, 164, 132 S.Ct. 1376, 1385, 182 L.Ed.2d 398 (2012)). "While a defendant's declaration of innocence is a factor that the PCRA court may consider, it is not determinative." ***Id.*** at 834. Thus, "nothing prevents a PCRA petitioner from meeting his burden under ***Lafler*** with 'his own self-serving statement' that he would have entered a guilty plea but for counsel's ineffectiveness." ***Id.*** at 832. "As long as the PCRA court finds the petitioner's testimony to be credible, there is no coherent justification for characterizing such evidence as inherently deficient as a matter of law. In cases…where a petitioner's testimony is credible and uncontradicted, it may suffice to establish a reasonable probability that the petitioner would have accepted the prosecution's plea offer." ***Id.*** at 832-33.

Instantly, trial counsel testified at the PCRA hearing that he did not think the DA's Office had any intent to charge Appellant with IDSI. (***See*** N.T. PCRA Hearing, 6/28/23, at 31-32, 36, 72; R.R. at 705a-706a, 709a, 746a). In fact,

the District Attorney had said something to trial counsel about IDSI, but ultimately told trial counsel "that there wasn't an IDSI." (*Id.* at 73; R.R. at 747a). Trial counsel clarified that he "had certainly a level of comfort that there wasn't going to be an IDSI after the interview [with Victim] based upon what she said and based upon the DA's…offhand remark[.]" (*Id.* at 83; R.R. at 757a).

Once the AG's Office took over the case due to a conflict of interest, the initial plea offer by the DA's Office, which contained a six-month minimum sentence, was no longer a "live" offer. (*Id.* at 33; R.R. at 707a). Although trial counsel had advised Appellant to accept the initial plea offer, Appellant refused. (*Id.* at 70; R.R. at 744a). Trial counsel stated that he was "as forceful as [he] could have been…in terms of trying to advocate for [Appellant] to seriously consider the…DA's plea offer[.]" (*Id.* at 40; R.R. at 713a). Trial counsel was "pushy" not only with Appellant, but also with Appellant's family members in an effort to convince Appellant to accept the DA's plea offer. (*Id.* at 78; R.R. at 752a). Counsel was concerned that if Appellant rejected the plea offer, "things would…turn out poorly for him." (*Id.*) Nevertheless, trial counsel said that Appellant "felt that he should not plead guilty to something that he wasn't guilty of." (*Id.* at 70; R.R. at 744a). Appellant also agreed that he "didn't want to plead guilty to something [he] didn't do." (*Id.* at 148; R.R. at 822a). Once the AG's Office took over and amended the criminal

- 14 -

information,[3] Appellant was offered a plea deal of 12 to 24 years' imprisonment, which Appellant also rejected. (*Id.* at 34; R.R. at 708a).

In evaluating Appellant's ineffectiveness claim, the PCRA court reasoned:

> Of all the PCRA claims made in this Petition, this claim is the most baffling and contradictory of all. The record seems clear, even by the admissions of [Appellant]. Prior to the matter being transferred for prosecution to the Office of the Attorney General, there was a plea offer made by the District Attorney. It was communicated by the District Attorney to trial counsel for [Appellant]. It was communicated by trial counsel to [Appellant]. It was communicated by [Appellant] and trial counsel to members of [Appellant's] family who were trusted advisors. All of these communications surrounded an offer to plead guilty to a reduced charge and to receive a period of incarceration in the Elk County Jail of 6 months minimum. After all of this communication, and after advice and opinions from his trial counsel and his family, without undue time constraints, or other forces which might compromise [Appellant's] reasoning or judgment, he rejected the plea offer. This is clear and is without fault by trial counsel. [Appellant] asserted throughout that he had done nothing wrong. Thereafter, the offer was withdrawn, and the case was transferred to the Office of the Attorney General. A re-evaluation of the evidence led to new charges and a revised plea offer, which was again communicated as set forth above, and was again rejected. [Appellant] continued to maintain he did nothing wrong.
>
> Nothing in this process can be found to be inadequate, or ineffective, other than the failure of all parties to foresee and anticipate that which was unknowable. The involvement of the Office of the Attorney General, and their review, was not known, and could not be known, by trial counsel. Throughout, [Appellant] continued to reject plea

_____

[3] Trial counsel explained that the AG's Office had extracted videos that the DA's Office "apparently had not." (*Id.* at 33; R.R. at 707a).

- 15 -

offers on the basis that he was innocent and had done nothing wrong. As such, the [c]ourt finds no fault or criticism of the handling of all plea offers and negotiations.

(PCRA Court Opinion, filed 1/4/24, at 2).

We agree with the court's analysis. *See Parker, supra*. Although Appellant argues that trial counsel should have known there was a possibility of greater charges against him, and should have made that possibility known to Appellant in an effort to further persuade him to plead guilty, we cannot say that the actions counsel undertook were unreasonable. The testimony from the PCRA hearing makes clear that trial counsel had no reason to believe that the Commonwealth would add IDSI charges at the time when the DA's Office was prosecuting the case. Thus, it was not unreasonable that trial counsel did not discuss the "potential" for such charges and the penalties that could accompany such charges when discussing the initial plea offer by the DA's Office with Appellant. *See Sandusky, supra*.

Further, although not dispositive, the record makes clear that Appellant maintained his innocence and rejected both plea offers because he did not want to plead guilty to acts which he claimed he did not commit. *See Steckley, supra*. The PCRA court's analysis suggests that the court did not find credible Appellant's assertion that, had he known the potential for the IDSI charges and the penalties that could follow those charges, he would have accepted the plea offer of the DA's Office. *Compare id.* Thus, Appellant cannot establish prejudice on this ineffectiveness claim, and Appellant's

- 16 -

second issue on appeal merits no relief.

In his third issue, Appellant argues that Victim's mother had pending charges against her at the time when she testified against Appellant at his trial. Appellant asserts that there was a possibility that she received a benefit concerning her pending cases in exchange for her testimony against Appellant. Appellant insists that trial counsel did not impeach, confront, or cross-examine Victim's mother about her pending charges and whether any benefit had been offered to her in exchange for her testimony, or if she hoped to receive any benefit in exchange for her testimony. Appellant emphasizes that Victim's mother "received a more favorable resolution than the initial charges suggested: a mid-level misdemeanor and probation for punching a police officer while he tried to take her into custody." (Appellant's Brief at 60-61) (internal quotation marks omitted). Appellant contends that trial counsel should have probed Victim's mother in more detail at trial such that the jury could properly assess her motivations in testifying against Appellant. Appellant notes that the fact that Victim's mother ultimately received a favorable deal in her own case only six weeks after Appellant's trial "lends credence to the idea that she received or could hope for some benefit for her role in [Appellant's] case." (*Id.* at 61 n.7). Appellant maintains that trial counsel had no reasonable basis for his actions, and Appellant suffered prejudice as a result. Appellant concludes counsel was ineffective on these grounds, and this Court must grant relief. We disagree.

This Court has explained that even where a prosecutor has made no promises to a witness, the witness may still "hope" for favorable treatment by testifying for the Commonwealth; "therefore, the criminal defendant against whom the witness is testifying is entitled to bring that fact to the attention of the jury via cross-examination of the witness." *Commonwealth v. Dawson*, 702 A.2d 864, 865-66 (Pa.Super. 1997), *appeal denied*, 555 Pa. 711, 724 A.2d 348 (1998).

Instantly, the PCRA court evaluated this issue as follows:

> At the time of trial, there were charges for assaulting a police officer with the Elk County District Attorney against the mother of the victim. [Appellant] now asserts that failure to explore any possible motive to protect herself, by offering false testimony, was an error.
>
> [I]t is important to remember that mother was not a witness to any of the events which led the jury to convict [Appellant] of the most serious charges. Fabricated or false testimony by mother would only have led to the jury questioning evidence of the lesser charges.
>
> Further, it is important to note that the Attorney General was not in a position to offer any favorable consideration to mother, as they were not prosecuting the assault case. The assault case, and this case against [Appellant], were being prosecuted by separate and distinct offices. It was precisely for this reason (the independence and separation) that the Office of Attorney General was engaged at all in this case.
>
> Lastly, the testimony and the emotions of mother at trial, and at the PCRA hearing, convince this [c]ourt that the welfare of the victim was the sole and only motivating factor of mother throughout. No reasonable assertion could be advanced after witnessing the behavior of mother in those venues that would lead to a conclusion that she was motivated by any force other than the maternal instinct to protect her daughter. Inquiry at trial into mother's

- 18 -

motivations would doubtless have unleashed a tirade of emotion and outrage, which could not have benefitted [Appellant]. This [c]ourt is convinced that self-protection or self-dealing were not demonstrated in the case.

(PCRA Court Opinion, filed 1/4/24, at 3-4).

The record supports the court's analysis. *See Parker, supra*. Appellant has offered no evidence to demonstrate that Victim's mother received any favorable treatment or promises from the Commonwealth in her own criminal case in exchange for her testimony against Appellant. The original District Attorney who prosecuted the case confirmed that no deals or agreements were made with Victim's mother to secure her testimony against Appellant. (*See* N.T. PCRA Hearing at 16; R.R. at 690a). As well, the attorney who prosecuted the case from the AG's Office confirmed that Victim's mother never asked for any consideration or assistance in her own criminal case in exchange for her testimony against Appellant, and Victim's mother never indicated that she hoped to realize any benefit in her criminal case in exchange for her testimony. (*See id.* at 163; R.R. at 837a). Further, the prosecuting attorney made clear that he had informed Victim's mother, upon the AG's Office taking over the case, that the AG's Office had nothing to do with prosecuting Victim's mother's criminal case and "[n]othing will be done for you in regards to those charges." (*Id.* at 164; R.R. at 838a).

Although Appellant claims trial counsel should have probed Victim's mother about her subjective hope for leniency (*see Dawson, supra*), Victim's mother made clear in her testimony at the PCRA hearing that she cared only

about getting justice for her daughter, and the outcome of her own case had nothing to do with her testimony. (*See id.* at 150-51; R.R. at 824a-825a). We will not disturb the PCRA court's credibility determination in favor of Victim's mother. *See Mojica, supra*. In light of her testimony, as well as the prosecuting attorney from the AG's Office's testimony that he expressly told Victim's mother that she would not receive favorable treatment in exchange for her testimony, Appellant cannot establish prejudice to succeed on this ineffectiveness claim. *See Sandusky, supra*. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 11/14/2024